MACK EDWARD COOPER,

*v.*

STATE OF TENNESSEE

(*Knoxville,* September Term, 1956.)

Opinion filed December 7, 1956.

JOE D. DUNCAN and GEORGE P. BALITSARIS, Knoxville, for plaintiff in error.

NAT TIPTON, Advocate General, for the State.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Under our statute, prior to the enactment of Chapter 72, Public Acts of 1955, if a robbery be committed the punishment was confinement in the penitentiary for an indeterminate period of not more than twenty-five years. Section 39-3901, T.C.A. By Chapter 72 of the Public Acts of 1955 this statute was amended so as to provide punishment by death or an absolute and much longer period of confinement, within the jury's discretion, "if the robbery be accomplished by the use of a deadly weapon". Section 39-3901, T.C.A. 1955 Supplement.

Cooper accomplished the robbery of Mrs. Arwood at her store by the use of a toy pistol which had the appear-

ance of being genuine. Upon the instructions of the Trial Judge that this toy was a "deadly weapon" within the meaning of this 1955 amendment, the jury fixed Cooper's punishment at 30 years in the penitentiary. The single question made by his appeal is whether such toy so used in the accomplishment of this robbery is "a deadly weapon" within the meaning of the 1955 amendment. If not, the maximum punishment which may be assessed is an indeterminate sentence of not more than fifteen years under the 1955 amendment.

No decision of our Court in point as to facts has been found. There is the Wisconsin case of *Luitze v. State,* reported in 204 Wis. 78, 234 N.W. 382, A.L.R. page 1202, referred to in the briefs, holding that an unloaded pistol cannot be regarded as a "dangerous weapon" within the meaning of such armed robbery statute. If it followed that decision, the Wisconsin Court would necessarily hold that a toy pistol does not come within the definition of a "deadly weapon" as used in our armed robbery statute. To the contrary, there is the New York case of *People ex rel. Griffin v. Hunt,* 267 N.Y. 597, 196 N.E. 598, cited in the State's brief, which holds that a toy pistol does come within the definition of a "deadly weapon" as used in such statute.

There is no predominant array of persuasive precedent supporting either an affirmative or negative answer to the question. Thus, this Court may be guided to the answer by the light of principle.

*Highsaw v. Creech,* 17 Tenn.App. 573, 69 S.W.2d 249, 252, holds that an air-gun is not a "dangerous" instrumentality, *per se.* Of course, and with much more force, must it be concluded that a toy pistol is not a "deadly weapon". It is an entirely harmless article, incapable,

152

within reasonable contemplation, of being " 'perverted into a dangerous use by design' ".

In support of its insistence that this toy comes within the definition of a "deadly weapon" within the meaning of the 1955 statute, the State suggests that the intent of the legislature was to remove from the mind of the intended victim the fear produced by the robber's apparent manifestation of ability and intent, if necessary, to use a deadly weapon in the accomplishment of his purpose, and thereby decrease the will to resist. The brief says that the legislature "has always recognized that resistance to threatened crimes is lawful and has encouraged such".

Our statutory definition of robbery is the taking of the property "by violence or putting the person in fear". Section 39-3901, T.C.A. In so far as the victim's fear is concerned, it is immaterial as to whether that fear was induced by the display of a toy pistol thought by the victim to be real, or the pointing by the robber in his coat pocket of his finger or hand so as to make the victim believe the bulge to be a pistol which the robber intended to use in the event of the victim's resistance. In either instance, the robber is equally as guilty. He accomplished the taking by putting his victim in fear.

Therefore, if the Court accepts the State's suggestion as to the legislative intent and alleged resulting legal implication, then, by the same token, it would follow that the Court must hold that such use of such finger or hand in such pocket so as to simulate the possession and threat to use a pistol brings it about that the robbery was "accomplished by the use of a deadly weapon" within the meaning of the 1955 statute, and, therefore, a jury's sentence to electrocution for the use of such finger

or hand must be upheld, rather than remanding the cause for the fixing of a penitentiary sentence of not less than five nor more than fifteen years, that being the punishment provided when the robbery is not "accomplished by the use of a deadly weapon". As the Court views it, the contemplation of such a result strongly militates against the accuracy of the State's interpretation of the legislative intent in the use of the expression "deadly weapon" in this 1955 amendment.

Often, an intended victim of a robbery in process is strongly inclined to resist. If the robber is in possession of a deadly weapon, he is the more likely to use it in the event of such resistance, and such use is likely to result in the death or great bodily harm of the intended victim. The fear of receiving the extreme punishment inflicted by law in the event of such use, or threatened use, would tend to prevent the employment of such a weapon in the accomplishment of the crime, and thereby would be prevented the use of a violence which might be deadly in effect.

It is the Court's opinion, therefore, that the intent of the legislature in the enactment of the 1955 amendment was to prevent the kind of violence which often attends the use of a deadly weapon in the perpetration of robbery. If the Court's interpretation be correct, it follows that the use of a toy pistol does not fall within the spirit of the legislative intent in the enactment of the 1955 amendment since such result would not be possible if the robbery be accomplished by the use of a toy pistol.

But if the Court should be willing to risk, though a life be involved, the opinion that a toy pistol does fall within the spirit of the meaning of "deadly weapon" as

used in the 1955 amendment, it would still be unable to bring this case within that amendment as to the use of a "deadly weapon" because a toy pistol does not fall within the letter of the definition of such a weapon.

The 1955 amendment is highly penal. With reference to such a statute, the rule uniformly followed in this jurisdiction is stated in *Richmond v. State,* 171 Tenn. 1, 6, 100 S.W.2d 1, 2, as follows:

" 'It has long been the well settled general rule that the penal statutes are subject to the rule of strict construction. They will not be construed to include anything beyond their letter even though within their spirit, and nothing can be added to them by inference or intendment.' Such have been the uniform decisions of this court", citing cases.

It is the conclusion of this Court that the use of a toy pistol in the accomplishment of a robbery does not come within Chapter 72 of the Public Acts of 1955 providing punishment by death or imprisonment for the term of years mentioned therein when the robbery "be accomplished by the use of a deadly weapon".

Reference has been made to the Wisconsin case of *Luitze v. State, supra,* wherein it was held that an unloaded, but real, pistol cannot be regarded as a dangerous weapon within the meaning of the armed robbery statute. In this connection, the Court thinks it proper to say that our holding in this toy pistol case is not to be construed as meaning that an unloaded, but actual, pistol does not fall within the 1955 robbery statute amendment. That question will be decided if, and when, it should arise.

The judgment will be modified to the extent of setting

aside the term of imprisonment fixed by the jury, and the cause will be remanded for the fixing by the jury of some term of confinement in the penitentiary of not more than fifteen years.