STATE of Missouri, Respondent,

v.

John Raymond KEENEY, Jr., Appellant.

No. 53117.

Supreme Court of Missouri, Division No. 1.

March 11, 1968.

Norman H. Anderson, Atty. Gen., Jefferson City, James P. Jouras, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Don B. Sommers, St. Louis, for defendant-appellant.

HIGGINS, Commissioner.

Appellant, charged by information with robbery in the first degree, was convicted by a jury which assessed his punishment at

5-years' imprisonment in the penitentiary. Sentence and judgment were rendered accordingly.

John Mavrakos, president of the Mavrakos Candy Company, testified that on January 3, 1967, his company operated a store at 524 North Grand (Grand and Washington), St. Louis, Missouri.

Beatrice Miller was employed by Mavrakos at the 524 North Grand Avenue store on January 3, 1967. Her hours were 2:30 p. m. to 9:00 p. m., and she was alone from 6:30 p. m. to 9:00 p. m. At approximately 6:35 p. m., "this fellow" came in and asked for broken milk chocolate. After some conversation about the amount desired, "He turned around and said no, he didn't want that. He just wanted all that was in the register. * * * He had his hand in his pocket and pushed it up on the counter when he asked for the money." She did not know what he had in his pocket but thought it was a gun. He also said, "We have your boss down on the corner" which she knew to be untrue. In response to the gestures and command of the man, Mrs. Miller gave him the money from the cash register. She recalled the amount as "a five-dollar bill and singles (10 to 15) and quarters * * * all I could pick up in my hand." The man then left by the Washington Avenue door, after which Mrs. Miller called the police and gave them a description of her assailant as "a white man about 25, five foot six, 145 pounds. * * * He went east on Washington * * *. He was a little dark, had green khaki trousers. * * * A gray hat, he had on a plaid jacket. * * * His skin was rough, like pock marked, and he had brown hair." She identified Exhibits 1, 2, 3, and 4 as the trousers, plaid shirt, coat, and hat worn by her assailant. These items were further identified by arresting officers as clothes worn by and taken from appellant upon his arrest.

Shortly after Mrs. Miller's call to the police, "it couldn't have been over 15 minutes," two officers brought appellant into the store and Mrs. Miller identified him as the holdup man. Subsequently, around 9:15 p. m., at the police station, she identified appellant as the holdup man and she also identified appellant as the holdup man at trial. A television camera was brought to the store but Mrs. Miller thought it was after the officers took appellant away.

Cross-examination showed that Mrs. Miller had been held up on three previous occasions and, in answer to whether she was put "in fear at all," she stated, "Well, it isn't a wonderful feeling. Q I appreciate that, but did you really think he had a gun in his pocket? A I really thought he did. Yes, sir."

Mrs. Miller was cross-examined also on her ability to give a description of her assailant to the police following the robbery.

"Q Now, were you in any way, Mrs. Miller, * * * upset at all or shaken up, that might in any way affect your description of this man? A No, sir. No, sir. Q You weren't at all upset by this experience? A That happens so fast you don't have time to get afraid, sir. Q Well, I don't mean at the time. I mean after it had a chance to sink in on you and you knew what happened. Weren't you a little upset and agitated? A I was upset, yes, but not that much. Q And, could that in any way have affected your description of this man? A No, sir. * * * I would never forget his face."

Detective William Franklin and his partner, Officer Alexander Boone, at approximately 6:30 p. m., January 3, 1967, received a "robbery 900" radio broadcast from their dispatcher which was the dispatcher's description of a holdup. The description given was that of a "white male, approximately 25, 30 years of age, about five foot six or seven, wearing olive green trousers, dirty plaid car coat with a plaid shirt * * and a dark hat." The officers were then entering the intersection of Channing, Lindell, Locust, Olive Streets, and "we observed a white male looking up and down the street and walking east on Locust Ave-

nue from Channing. * * * he was looking back up toward Grand Avenue and then he would look in the other direction. * * * As we approached him, we observed him take his hat off and put it in his inside part of his coat." They then arrested that man, the appellant. He was identified in court as the man arrested, as were Exhibits 1, 2, 3, and 4 as being the clothes worn by appellant when arrested. They also searched appellant. "In his trouser pocket we found a number of quarters, a five dollar bill and some ones and some other change. * * * 26 quarters, one five dollar bill, 11 one dollar bills, two dimes, and two one-cent pieces ($22.72)." Appellant was not armed. The arrest was made at "approximately 3422 Locust * * two and a half blocks—something like that" from 524 North Grand Avenue. "* * * we immediately took him up to the store and we entered the store. The clerk who was there was talking to officers, and—relative to the case, and I think we were about maybe a couple of feet or so in the door, and she looked up and she said, 'That's the man.'" She pointed to the defendant without hesitation. Detective Franklin saw no television cameras in the store.

Detective Boone's testimony corroborated that of Detective Franklin. In particular, he described the identification following the arrest. "After he was advised of his rights by my partner, we placed handcuffs on him and proceeded to the scene of the robbery with him. * * * Entered the Mavrakos Candy Store, at which time the clerk who had been held up—she was talking to some more police officers, and we walked inside the door with Mr. Keeney. She stopped in her conversation and stated, 'That's the man there,' sir." She volunteered the identification.

Elsie Koerber, manager of the Mavrakos Store, testified that on January 4, 1967, following the robbery, she established, through comparison of register tape figures, a shortage of "twenty-one dollars and thirty-five cents."

Appellant testified in his own behalf. He admitted that in his 34 years he had been previously convicted of a larceny in connection with bad checks in 1953, again in 1959, and again in 1966 on a charge of burglary involving checks. All three convictions were on guilty pleas and resulted in one 5-year probation and serving terms of one year at the Illinois State Penitentiary and six months in jail. He admitted wearing Exhibits 1, 2, 3, and 4 at the time of his arrest by Officers Franklin and Boone. He also admitted being in the vicinity of Grand and Washington but denied the holdup of Mrs. Miller and the Mavrakos Store. He claimed the money in his pocket as his own and as $20 paid him by one Frank Crockett on a debt. His version of Mrs. Miller's identification was that she was asked by the officers, " 'We've got this man. Is this the man that robbed you?' And, she said, 'Yes it is.' " He also stated "there were an awful lot of police officers and a couple of men with cameras. * * * I believe they were television." He stated Mrs. Miller was 25 to 30 feet from him when making her identification. He stated that upon his arrest he was told he had a right to remain silent but denied he was given any advice on his right to be supplied a lawyer. Officer Franklin, called in rebuttal, said that he advised appellant that he could remain silent; that anything he said would be held against him; that he was entitled to a lawyer, and that "a lawyer would be provided for him, provided he couldn't afford to get one." This advice was given him prior to taking appellant to the store. Appellant gave no statement or confession.

The case was submitted under an instruction authorizing conviction of robbery in first degree if the jury found that defendant robbed Beatrice Miller of money belonging to Mavrakos Candy Company "by then and there putting the said Beatrice Miller in fear of an immediate injury to her person."

■ Appellant's Points I and II go to the sufficiency of the evidence. By them

he contends his motions for acquittal should have been sustained on the theory there was not sufficient evidence to show a robbery by placing the victim in fear of immediate injury to her person, and that if there was any taking of money from Beatrice Miller "there was affirmative evidence that * * * the victim was not put in fear of immediate injury to her person" and therefore the court erred in failing to instruct on the lesser offense of stealing. State v. Adams, Mo., 406 S.W.2d 608, 611 [6]; State v. Herron, Mo., 349 S.W.2d 936, 940 [5]; State v. Whitley, 326 Mo. 226, 36 S.W.2d 937, 938 [4].

" * * * 'Fear need not be shown expressly.' State v. Thompson, Mo.Sup., 299 S.W.2d 468, 474. 'A presumption of fear will arise from evidence showing reasonable grounds therefor * * *.' 77 C.J.S. Robbery, § 45(b), p. 487." State v. Ray, Mo., 354 S.W.2d 840, 843 [7].

■ The evidence is sufficient to warrant the jury in finding that appellant, a man 34 years of age, five and a half feet tall, weighing 145 pounds, entered the Mavrakos Candy Store with his hand in his coat pocket; that he pushed or directed his pocket upward toward and onto the counter tended by Mrs. Miller, who was then alone in the shop, and demanded that she give him the money in the cash register. She described her emotion at this time, "it isn't a wonderful feeling," and she really thought appellant had a gun. These circumstances reasonably permit an inference of fear of immediate injury in Mrs. Miller pursuant to which she gave money from the register to appellant. Even if her testimony on cross-examination that she was not so agitated *after* the holdup that she could not accurately describe her assailant be considered in any way, as argued by appellant, a denial of fear at the holdup itself, her whole testimony does not force a construction that she was shown to be completely or affirmatively without fear when she was robbed. That she complied with her assailant's demand is indicative of

her fear of consequences which reasonably could result from failure to accede to the demand, and there is no evidence suggesting that she would have handed over her employer's money had she not been motivated by fear. State v. Ray, supra.

Appellant argues that State v. Ray, supra, and State v. Thompson, Mo., 299 S.W.2d 468, are not authority supporting a finding of fear in this case because they involved guns and audible threats of violence. Those cases did involve guns, but the principles cited from those cases are applicable here; and, contrary to appellant's assertion, Missouri has held that robbery in first degree "might be accomplished without an assault by putting him (victim) in fear of personal injury when there was no actual possibility of it, as where the robber flourishes a harmless imitation pistol or falsely pretends to be pointing a pistol supposedly concealed in his pocket." State v. Medley, 353 Mo. 925, 185 S.W.2d 633, 634 [1, 2]; State v. Scarlett, Mo., 291 S.W.2d 138, 141 [6]. See also Cooper v. State, 201 Tenn. 149, 297 S.W.2d 75, 61 A.L.R.2d 993, 995 [2], and Anno. 61 A.L.R.2d 999.

■ Appellant urges that the confusion in the testimony of Elsie Koerber destroys the proof of a robbery of any money. Mrs. Koerber did show some confusion in her cross-examination but she stated the loss to be $21.35. In this, she was corroborated by the testimony of Mrs. Miller that a five-dollar bill, some "singles," and a handful of quarters were taken by appellant, and by the officers' testimony that when arrested appellant had $22.72 in his pocket consisting of a five-dollar bill, eleven ones, 26 quarters, two dimes, and two pennies.

■ Since the proof was sufficient in these questioned respects and in all others under the statute on robbery in first degree, it was not necessary to instruct on any lesser offense. State v. Thompson, supra, 299 S.W.2d 1. c. 474 [14–16].

■ Appellant claims in Point IV that his failure to have counsel before and dur-

ing pretrial confrontation by an identification witness (Mrs. Miller) rendered her testimony inadmissible and it was error, therefore, not to exclude her testimony at trial. This contention of right to counsel at pretrial confrontations as a matter of law is urged under United States v. Wade, June 12, 1967, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and the point is denied without discussion because Stovall v. Denno (June 12, 1967), 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, held that the ruling on this point in United States v. Wade was not retroactive. State v. Blevins, Mo., December 11, 1967, 425 S.W.2d 155. John Raymond Keeney, Jr., was tried March 22 and 23, 1967.

Appellant's Point III is also a claimed denial of due process by denial of right to counsel before and during pretrial confrontation by a witness. The argument is that the pretrial confrontation with the prosecuting witness (Mrs. Miller), "especially at the scene of the crime, created an opportunity for unnecessary suggestion and * * * invited an irreparable mistaken identification" and that the procedure followed by the arresting officers was "unnecessary and unfair."

■ This contention raises the question whether appellant "although not entitled to the application of (United States v. Wade, supra), is entitled to relief on his claim that in any event the confrontation * * * was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law. This is a recognized ground of attack upon a conviction independent of any right to counsel claim. Palmer v. Peyton, 359 F.2d 199 (CA 4th Cir 1966)." Stoval v. Denno, supra, 388 U.S. 1. c. 301, 87 S.Ct. 1. c. 1972, 18 L.Ed.2d 1. c. 1206 [2]. See also Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

This involves ascertainment of the "totality of circumstances," and absence of a lineup for purposes of alternative choices for identification is but a single factor in the totality of circumstances. State v. Blevins, supra.

■ The totality of circumstances surrounding appellant's pretrial identification by Mrs. Miller shows that appellant was arrested two and a half blocks from the crime scene within minutes of the commission of the crime. Although denied by appellant, the officers stated appellant was advised of his rights, including right to remain silent, right to counsel, and right to have counsel appointed if he were unable to afford a lawyer of his own choosing. He made no demand for a lawyer and was taken immediately to the store where, according to the officers, Mrs. Miller, without any suggestive statement or question, voluntarily stated, "That's the man" and pointed to appellant. There were no cameramen or other confusing circumstances. The arrest itself was made pursuant to an accurate detailed description of appellant given the police immediately following the robbery by the identifying witness. No implantation or suggestion was necessary to her identification. These circumstances simply are not suggestive of any pre-Wade case denial of due process because the evidence shows the witness had prior opportunity to observe the accused during the act of robbery; there were never any discrepancies between the original description and later identifications; there was never a failure to identify, and the lapse of time between observation, description, arrest, and identification is insignificant. This "totality of circumstances" is not demonstrative of an unfair trial. State v. Blevins, supra.

Matters of record for examination and Criminal Rules 28.02 and 28.08, V.A.M.R., are free of error.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All of the Judges concur.