556

HENRY SANDERS CAMPBELL and JAMES S.
CRAWLEY, Plaintiffs in Error, v. STATE OF
TENNESSEE, Defendant in Error.

464 S.W.2d 334.

Court of Criminal Appeals of Tennessee. Jan. 19, 1971.

Certiorari Denied by Supreme Court March 1, 1971.

Hugh W. Stanton, Jr., Memphis, for plaintiffs in error.
David M. Pack, Atty. Gen., Robert H. Roberts, Asst. Atty.

Gen., Nashville, Don A. Strother and James G. Hall, Asst. Dist. Attys. Gen., Memphis, for defendant in error.

## OPINION

OLIVER, Judge.

Henry Sanders Campbell and James S. Crawley, the defendants below, indigent and represented by the Shelby County Public Defender upon appointment by the court, were convicted of armed robbery in the Criminal Court of Shelby County and were sentenced to imprisonment for 30 years in the State Penitentiary. They have duly perfected an appeal in the nature of a writ of error to this Court.

The only Assignments of Error here challenge the sufficiency of the evidence to warrant and sustain the verdicts of the jury. However, the defendants, who did not testify or introduce any evidence at the trial, have raised no question concerning the sufficiency of the evidence to establish that they entered a drive-in grocery store about midnight on February 12, 1968 and, by menacing and intimidating the manager and an employee and forcing them to lie on the floor by vile and scurrilous vituperation and by threatening repeatedly to shoot them with a German luger type pistol brandished by Campbell, robbed the cash register of approximately $180 and then fled.

Rather, the whole basis of the defendants' challenge to the sufficiency of the evidence is that it demonstrates that the pistol used in the holdup was not loaded. They insist that an unloaded gun is not a "deadly weapon" within the intendment and purview of that

term in T.C.A. § 39-3901 and, they contend therefore, that a robbery accomplished by the use of an unloaded gun does not constitute the highly aggravated and serious crime of robbery "by the use of a deadly weapon" proscribed by that statute.

While it may be argued that the evidence does not conclusively resolve the question whether the pistol used in this robbery was loaded, we think it is fair to say that it was not. During the holdup, Campbell continuously used his free hand to operate the mechanism of the automatic-type pistol by pulling the slide to the rear and then releasing it to move forward into firing position, all the while threatening to shoot the manager and store employee and being urged to do so by Crawley. The defendants contend that such operation of the mechanism of the pistol successively places cartridges in the chamber and ejects them, and that the fact that no cartridges were ejected during Campbell's manipulation of the gun demonstrates that it was unloaded. We agree, as did the trial judge.

But we cannot subscribe to the defendants' insistence and theory that they could not be and were not guilty of robbery "by the use of a deadly weapon" simply because they used an empty gun. In Turner v. State, 201 Tenn. 562, 300 S.W.2d 920, holding that an unloaded sawed-off shotgun is a "deadly weapon" within the meaning of the armed robbery provision of T.C.A. § 39-3901, the Court rejected the defendant's theory:

"The authorities generally hold that whether the weapon was incapable of being discharged was irrelevant, as it was in the case of Moore v. Common-

wealth, 260 Ky. 437, 86 S.W.2d 145, 146. The annotation to 74 A.L.R. 1209, fully covers this subject. The annotation discloses that with the exception of Wisconsin every State, which has passed upon the question, has held that whether a deadly weapon is capable of being shot is immaterial where the prosecution is for robbery with a deadly or dangerous weapon.

"It was said in Moore v. Commonwealth, supra:

> 'Under this statute, it is not necessary for the indictment to charge, or the commonwealth to prove, that the pistol was loaded and in every respect capable of being used as a firearm. To so hold would render the statute a nullity, for the very obvious reason that the victim, or intended victim, of a robbery has no opportunity to examine a firearm to ascertain whether or not it is loaded. A person assaulted with a pistol has the right to assume that it is loaded and capable of producing death, and will not be required to subject himself to the danger of first endeavoring to ascertain those facts before yielding to the demands of the robber.'

"We think the reasoning in the above quotation applies equally to an unloaded shotgun.

"In our very recent case of Cooper v. State, 201 Tenn. 149, 297 S.W.2d 75, 78, the instrument there used was a toy pistol, and the Court modified the thirty year term in the penitentiary fixed by the jury and set aside and the case was remanded for the fixing by the jury of some term of confinement in the penitentiary of not more than fifteen years, which is the

punishment prescribed for robbery from the person. The Court in that case came to the conclusion that a toy pistol was not a deadly weapon as contemplated by our statute. A toy pistol is very much different from a sawed-off shotgun.

"In Cooper v. State, *supra,* it is said:

'It is the conclusion of this Court that the use of a toy pistol in the accomplishment of a robbery does not come within Chapter 72 of the Public Acts of 1955 providing punishment by death or imprisonment for the term of years mentioned therein when the robbery "be accomplished by the use of a deadly weapon."

'Reference has been made to the Wisconsin case of Luitze v. State, *supra* (204 Wis. 78, 234 N.W. 382, 74 A.L.R. 1202), wherein it was held that an unloaded, but real, pistol cannot be regarded as a dangerous weapon within the meaning of the armed robbery statute. In this connection, the Court thinks it proper to say that our holding in this toy pistol case is not to be construed as meaning that an unloaded, but actual, pistol does not fall within the 1955 robbery statute amendment. That question will be decided if, and when it should arise.'

"It is sufficient to say that in the case now being considered, we are of the opinion that the sawed-off shotgun is a deadly weapon within the meaning of the 1955 amendment, and this would be so even though the gun were unloaded."

Thus, it is no longer open to question or debatable that under the law of this State the fact that the gun used was unloaded is no defense to a charge of robbery by the use of a deadly weapon. As the Supreme Court of Colorado said long ago in McNamara v. People, 24 Colo. 61, 48 P. 541, "the intimidation of a person may be just as effectually accomplished by an apparent, as well as an actual, ability to inflict the menaced injury." In the case before us, the store manager testified that Campbell stuck the pistol right under his nose, that "as far as I was concerned it was a loaded pistol," that Campbell's "actions indicated to me that he really meant business," and that "I thought I was dead to be honest with you the way he kept clicking the gun and with his partner reiterating to shoot us. I figured that was it, to be perfectly honest with you."

In Burgin v. State, 217 Tenn. 682, 400 S.W.2d 539, Mr. Justice Creson wrote for the Court:

"* * * This Court has heretofore recognized that the 1955 Amendment [to T.C.A. § 39-3901] as to robbery accomplished by the use of a deadly weapon is highly penal and is subject to the rule of strict construction. Cooper v. State (1956), 201 Tenn. 149, 297 S.W.2d 75, 61 A.L.R.2d 993. However, this Court is also cognizant of the intention of the Legislature in enacting the 1955 Amendment so as to provide for punishment by death, imprisonment for life, or for any period of time not less than ten (10) years, for robbery accomplished by the use of a deadly weapon. This purpose was to prevent the kind and character of violence which often attends

562

the use of a deadly weapon in the perpetration of a robbery."

For cases from other jurisdictions which have recognized that one can be convicted of robbery by means of a deadly weapon notwithstanding the fact that the gun used was unloaded, see 79 A.L.R.2d 1426.

■ Finally, it is argued here that articles of clothing and a German luger type .22 pistol were erroneously admitted in evidence because they were seized in an illegal search of the premises where Campbell was arrested, the contention being that the search was not incident to his arrest. This question was not raised in the motion for a new trial, nor is it presented here by any Assignment of Error. We must adhere to the settled law of this State that the appellate court can review only questions presented for determination in the lower court. Wilkerson v. State, 208 Tenn. 666, 348 S.W.2d 314; Kirby v. State, 214 Tenn. 296, 379 S.W.2d 780; Ezell v. State, 220 Tenn. 11, 413 S.W.2d 678; Lawler v. McCanless, 220 Tenn. 342, 417 S.W.2d 548. In *Kirby,* the Court said:

"Questions raised for the first time on appeal will not be considered, or stated in another way, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial. See Ex parte Calhoun, 187 Tenn. 372, 215 S.W.2d 789 (1948); Parker v. Reddick, 196 Tenn. 472, 268 S.W.2d 357, 45 A.L.R.2d 1086 (1954), and Rule 14(5), Rules of this Court, which provides in part:

'This is a court of appeals and errors, and its juris-

diction can only be exercised upon questions and issues tried and adjudged by inferior courts, the burden being upon the appellant, or plaintiff in error, to show the adjudication, and the error therein, of which he complains.' "

Let the judgment of the trial court be affirmed.

MITCHELL, J., concurs.

GALBREATH, Judge.

I must respectfully dissent.

Both the trial court and all the members of this reviewing Court have found as a matter of settled fact that the agency used to induce the fear necessary to accomplish the robbery was not capable of producing the deadly results the danger of which must have been the basis for the enhancement of the penalty for the crime if accomplished by the use of a deadly weapon.

I agree with the cases cited by the majority that as a general matter it is irrelevant whether the weapon used was incapable of being fired. Particularly do I agree with the statement quoted from Moore v. Commonwealth, 260 Ky. 437, 86 S.W.2d 145, by our Supreme Court in Turner v. State, 201 Tenn. 562, 300 S.W.2d 920, to the effect that it is not necessary for the indictment to charge, or the State to prove, that a gun used to commit a robbery was loaded and capable of being used as a firearm, and that the person assaulted with an apparently deadly weapon has the right to assume that it is capable of the use for which such weapons are generally intended. Above all I subscribe to the proposition that such a person will not be required to subject

himself to the "danger of first endeavoring to ascertain those facts before yielding to the demands of the robber."

This case is readily distinguishable from *Turner*, in my considered opinion, and falls more nearly into the category of the "toy pistol" case described in Cooper v. State, 201 Tenn. 149, 297 S.W.2d 75, and Luitze v. State, 204 Wis. 78, 234 N.W. 382. The latter case holds that an unloaded pistol cannot be regarded as a dangerous weapon within the meaning of an armed robbery statute.

The legislative intent behind the armed robbery statutes is correctly set out in Burgin v. State, 217 Tenn. 682, 400 S.W.2d 539, as quoted by Judge Oliver for the majority: "to prevent the kind and character of violence which often attends the use of a deadly weapon in the perpetration of a robbery." However, earlier the Supreme Court, in *Cooper, supra,* rejected the suggestion that it is the fear engendered that should be considered rather than the actual danger posed by the use of a deadly weapon when it pointed out:

> "In so far as the victim's fear is concerned, it is immaterial as to whether that fear was induced by the display of a toy pistol thought by the victim to be real, or the pointing by the robber in his coat pocket of his finger or hand so as to make the victim believe the bulge to be a pistol which the robber intended to use in the event of the victim's resistance. In either instance, the robber is equally as guilty. He accomplished the taking by putting his victim in fear.

> "Therefore, if the Court accepts the State's sug-

gestion as to the legislative intent and alleged resulting legal implication, then, by the same token, it would follow that the Court must hold that such use of such finger or hand in such pocket so as to simulate the possession and threat to use a pistol brings it about that the robbery was 'accomplished by the use of a deadly weapon' within the meaning of the 1955 statute, and, therefore, a jury's sentence to electrocution for the use of such finger or hand must be upheld, rather than remanding the cause for the fixing of a penitentiary sentence of not less than five nor more than fifteen years, that being the punishment provided when the robbery is not 'accomplished by the use of a deadly weapon'. As the Court views it, the contemplation of such a result strongly militates against the accuracy of the State's interpretation of the legislative intent in the use of the expression 'deadly weapon' in this 1955 amendment.

"Often, an intended victim of a robbery in process is strongly inclined to resist. If the robber is in possession of a deadly weapon, he is the more likely to use it in the event of such resistance, and such use is likely to result in the death or great bodily harm of the intended victim. The fear of receiving the extreme punishment inflicted by law in the event of such use, or threatened use, would tend to prevent the employment of such a weapon in the accomplishment of the crime, and thereby would be prevented the use of a violence which might be deadly in effect.

"It is the Court's opinion, therefore, that the intent of the legislature in the enactment of the 1955 amendment was to prevent the kind of violence which often

attends the use of a deadly weapon in the perpetration of robbery."

Boiled down to its essential element, it is the danger to human life that the law seeks to reduce. The crime is the same whether the fear is caused by a shotgun that the victim has loaded himself or by a doubled up fist that appears capable of striking the victim in the nose. Property is taken by threatened force and violence. But the law is relatively appreciative of a robber's decision to employ his fist rather than a knife or other agency capable of producing death efficiently, and fixes a lesser punishment if the criminal forbears the use of such a weapon. We should encourage robbers to use non-deadly weapons in their trade (or rather discourage the use of deadly ones) and this was the result sought by the 1955 amendment creating a distinction between the two types of robbery.

There is a difference between the cases such as *Turner, supra,* and the instant one. In *Turner* the jury was justified in believing that the gun was loaded. The defendant's contention, made days after the robbery, that the shotgun was not loaded was incredible; and the jury had every right to infer that the gun was in fact fully loaded. But what would have been the result if, as in this case, Turner had demonstrated to the victim that the shot gun was *not* loaded? Suppose he had said, "Don't worry. This gun isn't loaded. I'll break it down and prove it isn't loaded and point it the other way and pull the trigger. As a matter of fact, after doing that I will leave it broken down and hold it by the barrel and just use it as a stick, because if you resist all I need to do is knock you down with its butt, and I don't want to risk hurting

you too badly." Assuming those facts, would the decision in *Turner* have been the same? No, because the very purpose of the statute—to insulate the victim from the danger of deadly violence—would have been served. The crime still would have been serious, and a robbery accomplished in such a relatively considerate and humane manner would still have earned Turner up to 15 years in the penitentiary, but it would not have justified the forfeiture of his life by electrocution. In the record before us it has been proved, as it was not in *Turner,* that the weapon was not deadly.

The situation is analogous to a prosecution for assault with intent to commit first degree murder in which it is proved beyond doubt that the defendant pointed an unloaded pistol at someone in order to frighten him. The victim under such circumstances may be even more frightened than many who are faced with actual, not just apparent, sudden death. But since there is no threat to life involved, there could of course be no conviction for an intent to take it. In a prosecution for such an intended homicide it would be sufficient to prove the use of a deadly weapon which would be presumed loaded and capable of killing, but in the face of proof to the contrary this presumption would give way. See generally 40 C.J.S. Homicide § 168 and the cases cited.

In this case it was not necessary to prove either that the weapon was, or was not, capable of inflicting death. But in the impartial search for truth it was established beyond doubt that the pistol was no more a threat to the victim's life than was the toy pistol to the victim in *Cooper, supra.* This entitles the perpetrator of such a proved non-deadly crime to be treated more favorably

than those who actually pose a direct threat to the lives of their victims.

Cooper v. State, *supra,* has never been overruled and is still the law in Tennessee. It does not stand alone for the obvious proposition that a toy cannot be termed a deadly weapon. It emphasizes and reiterates the settled law that produced its ruling, and I find nothing in *Turner* or any other case that changes the following, which fits the proved facts in this case like a glove:

> "The 1955 amendment is highly penal. With reference to such a statute, the rule uniformly followed in this jurisdiction is stated in Richmond v. State, 171 Tenn. 1, 6, 100 S.W.2d 1, 2, as follows:
>
> > ' "It has long been the well settled general rule that penal statutes are subject to the rule of strict construction. They will not be construed to include anything beyond their letter even though within their spirit, and nothing can be added to them by inference or intendment." Such have been the uniform decisions of this court,' citing cases."
>
> Cooper v. State, *supra.*

The majority opinion does violence to the settled law by holding as a matter of law an object was a deadly weapon that was proved as a matter of fact to be non-deadly. This invades not just the spirit but the literal letter of the law.

For the reasons set forth above, I would reduce the conviction to simple robbery.