**STATE of Missouri, Respondent,**

v.

**Charles Andrew LONG, Appellant.**

**No. 37114.**

Missouri Court of Appeals,
St. Louis District,
Division One.

June 8, 1976.

Motion for Rehearing or Transfer
Denied July 9, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Christelle Adelman-Adler, Asst. Public Defender, Charles D. Kitchin, Public Defender, James C. Jones, Asst. Public Defender, Robert C. Babione, Public Defender, St. Louis, for appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., James J. Barta, Asst. Circuit Atty., St. Louis, for respondent.

RENDLEN, Judge.

Charles Andrew Long appeals his conviction of robbery first degree by means of a dangerous and deadly weapon and sentence of five years imprisonment, asserting as error: (1) insufficiency of the evidence, and (2) refusal to instruct on lesser offenses.

On December 23, 1974, McKinley Buliox was shot and robbed by two armed men in his Delmar Boulevard-St. Louis Apartment. Buliox testified that appellant and a male companion came to his third floor apartment after he had tossed the keys to them from his upstairs window. It was an old building without doorbells and visitors frequently called or whistled to announce their presence. Buliox had known appellant casually for about a month prior to the robbery.

While Buliox sat talking with appellant, the other man left the room; returning shortly he brandished a pistol and demanded money. Startled by this development,

Buliox implored appellant to have his friend "cut it out." Instead appellant ordered Buliox to sit down, be quiet and tell where the money was kept. Learning it was in a dresser drawer, appellant took $6 found there and demanded more. Buliox stated that was all he had but would write a check. At this time appellant, who was also holding a gun, searched the dresser for Buliox' checkbook and while doing so, his companion shot Buliox in the face. Appellant came to the room and seeing Buliox bleeding on the couch asked, "Did you pop him, man?" and the other said, "Yes." Buliox remained motionless for as he explained, "I was afraid if I moved or anything they would have killed me." The two then took his television set and fled. Bleeding profusely, Buliox called the police and was taken to Homer G. Phillips Hospital. The bullet entered his head near the eyebrow, passing out through the side of his face; fortunately, the brain was untouched. Various portions of Buliox' testimony were corroborated by the officer responding to the original call, the medical records custodian from Homer G. Phillips Hospital and a detective who investigated the crime.

Appellant, as the sole defense witness, stated he met Buliox about one month prior to the robbery but denied any connection with the crime. He admitted visiting the apartment in the second week of November but testified he left when Buliox made homosexual advances. Appellant testified he refused these advances and Buliox told him, "I will be sorry."

To support his first contention of error, appellant argues his testimony concerning the homosexual advances (categorically denied by Buliox) cast such doubt on the prosecuting witness' credibility that as a matter of law the court should not believe him and without his testimony the evidence was insufficient to make a submissible case.

■ When examining the record to determine sufficiency of the evidence, we "view the facts in evidence and the inferences reasonably to be drawn from them in the light most favorable to the State, to determine whether there was substantial evidence to support the verdict." *State v. Williams*, 521 S.W.2d 29[1] (Mo.App.1975).

■ Appellant's unsupported allegations of prior bad blood and homosexual advances are insufficient to destroy the State's witness' credibility as a matter of law but goes instead to the weight of the testimony. "It is not our function or prerogative to weigh the evidence to determine whether the charge has been proven beyond a reasonable doubt; that is a function of the jury." *State v. Achter*, 514 S.W.2d 825, 826[2] (Mo.App.1974). Competent evidence of all elements appearing, a submissible case was made. We find the point without merit.

■ Next appellant contends the trial court's refusal to instruct on the lesser offenses of (1) robbery first degree (not with a dangerous and deadly weapon), and (2) stealing from a person, was error. As to the former, appellant's argument misses the mark since robbery first degree is not a lesser offense which on a proper showing might warrant the proffered instruction. The information charged robbery first degree "contrary to Section 560.120 Missouri Revised Statutes." It has been held in *State v. Vigus*, 66 S.W.2d 854, 857[12] (Mo.1933) that, "Robbery in the first degree, if the other elements are present, comprehends an act committed *with* or *without* a dangerous and deadly weapon." (Emphasis ours.) Here the information additionally charged the robbery was committed "by means of a dangerous and deadly weapon, to-wit: pistol . . . " It has been held that "[s]uch an allegation is only for the purpose of invoking the more severe penalty prescribed by the first provision of section 4061," (now § 560.135, RSMo. 1969). *State v. Vigus, supra* at 857. As stated in *State v. Curtis*, 324 Mo. 58, 23 S.W.2d 122, 124[2] (1929), "The new section 3310 [now § 560.135, RSMo. 1969], does not make that a crime which was not a crime before."

■ The "dangerous and deadly weapon" element goes merely to the penalty and "it is not a charge of a separate offense, as such." *State v. Pope*, 364 S.W.2d 564, 568

[5] (Mo.1963). Under § 560.135, RSMo. 1969, the death penalty was authorized if a dangerous and deadly weapon was employed in a first degree robbery. However under *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), and *Terry v. Missouri,* 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972), the statutory authority for the death penalty was effectively voided by judicial action and thereafter the range of punishment for robbery first degree *with* or *without* a dangerous and deadly weapon has been five years to life imprisonment.[1] The instructions given required an additional finding, not contained in that refused. Thus the State undertook an additional burden of which the defendant may not be heard to complain. The trial court properly refused appellant's proffered instruction.

■ Concerning the refused instruction on stealing from a person, it has long been held that the court need not instruct on such offense if the evidence is sufficient to make a submissible case on the charge of first degree robbery with a dangerous and deadly weapon. See *State v. Gideon,* 453 S.W.2d 938, 940[10] (Mo.1970); *State v. Keeney,* 425 S.W.2d 85, 89[4] (Mo.1968). Under the evidence defendant was clearly guilty of robbery in the first degree or guilty of no offense at all. Alibi was the only defense. Appellant's proffered instruction was properly refused. *State v. Whalen,* 148 Mo. 286, 49 S.W. 989, 990[3] (1899); *State v. Thompson,* 299 S.W.2d 468, 474[16] (Mo.1957). The judgment is affirmed.

WEIER, P. J., and McMILLIAN, J., concur.

___

1. In 1975, § 560.135 was amended eliminating the death penalty.