**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gregory SYKES, Defendant-Appellant.**

**No. 38827.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 30, 1978.

Motion for Rehearing and/or Transfer
Denied July 14, 1978.

Application to Transfer Denied
Sept. 12, 1978.

Paul E. Corning, Jr., Clayton, for defendant-appellant.

Gregory W. Schroeder, Stanley Robinson, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

STEPHAN, Judge.

Defendant Gregory Sykes appeals from a conviction of robbery in the first degree. Pursuant to the jury's verdict, the circuit court sentenced him to imprisonment for a term of five years. He contends that the trial court erred in (1) failing to grant his motion for acquittal at the close of all the evidence and his post-trial motion to set aside the jury verdict; (2) failing to submit

an instruction on the lesser-included offense of stealing; and (3) refusing to declare a mistrial after the prosecutor asked him if he told the officers who arrested him that the gun he used was a toy rather than a real weapon. Upon review of these allegations, we affirm.

The robbery in question occurred on March 8, 1976, in a Quick Shop market in St. Louis County. Two clerks were on duty at the time: Leonard Grinstead and Patricia Herring. Grinstead testified that he was "more or less" in charge of the cash in the store because he "had the combination to the safe." Defendant entered the store and, after purchasing a jar of fruit juice which Grinstead placed in a bag, defendant pulled his jacket aside and partially withdrew a small handgun from his pocket. Grinstead testified he "knew for certain (defendant) was pulling a gun." Grinstead asked defendant if he wanted the money from the cash registers and the safe. (There is some question as to whether Grinstead or the defendant was the first to mention the safe.) Patricia Herring and a customer who entered the store at this time were ordered by defendant to go into a walk-in cooler, while Grinstead emptied the registers and the safe and placed the money in the bag. Grinstead testified that he was nervous and that "I felt I should give him whatever he asked for because I knew he was armed." At defendant's order, Grinstead entered the cooler. When he emerged a short time later, defendant and the money were gone.[1] Patricia Herring did not testify.

In his defense, Gregory Sykes testified that he intended to carry out the robbery pursuant to a plan devised by Patricia Herring's husband to pay for a new apartment for the Herrings. Defendant was to go to the Quick Shop where Mrs. Herring worked and she was to turn the money over to him. However, when he found a man (Grinstead) rather than Mrs. Herring behind the coun-

1. In a signed statement, the voluntariness of which is not an issue in this appeal, Sykes wrote: "I parked the car in front of the, (sic) got by the restaurant and went in and said 'the (sic) is a robbery, open the safe and empty the cash register.' I told the people to get in the icebox, and then I left."

ter, defendant was forced to change the plan and carried out the robbery as described above. Because of Grinstead's calm, cooperative manner, defendant came to believe that he too was aware of the plan, although he had previously been told by the Herrings that Grinstead should not be made aware that this was an "inside heist" and that Mr. Herring could not play the role of the robber because Grinstead was acquainted with Mr. Herring. Defendant further testified that the "gun" he was carrying was, in fact, a toy cap pistol.

First degree robbery is defined in § 560.120, RSMo 1969, to include the felonious taking of another's property "against his will, by violence to his person, or by putting him in fear of some immediate injury to his person." Defendant contends that the evidence produced by the state was insufficient to support a conviction of first degree robbery in that it shows that he "did not intentionally say anything or do anything intended to cause either of the employees to be in fear" and that he did not believe the taking to be against the will of Mrs. Herring or Grinstead.

Defendant's first argument is without merit. Under these circumstances, the exhibition of what appears to be a deadly weapon, with or without a verbal threat, can only be interpreted as a threat of violence and an attempt to induce a fear of the consequences of a failure to comply with the exhibitor's wishes. The second argument is also without merit. It is irrelevant that, at the time he actually took control of the money, defendant may have come to the conclusion that Grinstead was acting in complicity in the staged robbery. First degree robbery is not a crime of specific intent. *State v. Kennebrew,* 380 S.W.2d 293, 295 (Mo.1964); *State v. Stinson,* 379 S.W.2d 545, 547 (Mo.1964). It is sufficient here (coupled with the other necessary elements of the crime) that defendant's actions did, in fact, put Grinstead in fear of immediate personal injury.

*State v. Keeney,* 425 S.W.2d 85 (Mo.1968) bears many factual similarities to this case. There, the evidence was that the defendant entered a candy store with his hand in his coat pocket; he pushed his pocket up and directed the clerk to give him the money from the cash register. Believing he had a gun in his pocket, she complied. She had been through three prior robberies; and, when asked if the man's conduct made her fearful, she responded "Well, it isn't a wonderful feeling." Id. 87. Arrested within minutes, the man was found to be unarmed. As in this case, it was argued that the evidence could not support a conviction of first degree robbery and that it was error to fail to instruct on the lesser offense of stealing. After reviewing the facts, the court dismissed both arguments saying, at page 89:

> "These circumstances reasonably permit an inference of fear of immediate injury in Mrs. Miller pursuant to which she gave money from the register to appellant. * * * That she complied with her assailant's demand is indicative of her fear of consequences which reasonably could result from failure to accede to the demand, and there is no evidence suggesting that she would have handed over her employer's money had she not been motivated by fear."

In *Keeney,* the appellant attempted to distinguish cases which involved displayed guns and audible threats of violence such as *State v. Ray,* 354 S.W.2d 840 (Mo.1962) and *State v. Thompson,* 299 S.W.2d 468 (Mo. 1957). Such efforts were rejected by the court's expression of views with which we agree:

> "Those cases did involve guns, but the principles cited from those cases are applicable here; and, contrary to appellant's assertion, Missouri has held that robbery in first degree 'might be accomplished without an assault by putting him (victim) in fear of personal injury when there was no actual possibility of it, as where the robber flourishes a harmless imitation pistol or falsely pretends to be pointing a pistol supposedly concealed in his pocket.' *State v. Medley,* 353 Mo. 925, 185 S.W.2d

633, 634[1, 2]; *State v. Scarlett*, Mo., 291 S.W.2d 138, 141[6]."

*Keeney*, 89.

■ We do not believe the evidence in this case would permit a finding of any crime other than first degree robbery, as defendant maintains in his second point. By defendant's own admission at trial, Grinstead was not a part of the plan. Given that fact, Grinstead's actions if not his manner evince no motive other than fear. Regardless of what the offense would have been had the robbery been staged as originally conceived, it could only be first degree robbery as it was actually carried out. The trial court was, therefore, correct in not instructing the jury on a lesser offense. *State v. Keeney, supra*, 89[4]; *State v. Thompson, supra*, 474; *State v. Long*, 539 S.W.2d 592, 595[7] (Mo.App.1976).

■ Finally, defendant contends that the trial court erred in failing to declare a mistrial when the following exchange occurred during cross-examination of defendant:

"Q (by Mr. Robyn): When you were arrested did you tell the officers that that was a toy gun?

A They never asked me.

Q Did you tell?

MR. GOODLOE: I'll object, and ask for a mistrial, that a mistrial be declared. The prosecutor knows that a defendant has absolutely no obligation to make any statements to the police officer, and that that question violates my defendant's constitutional rights to remain silent. I am asking for a mistrial at this time.

THE COURT: Objection will be overruled. And your request for a mistrial will be denied.

Q (by Mr. Robyn): Did you tell the officers it was a toy gun?

MR. GOODLOE: I'll object to that on the ground—

THE COURT: I already overruled your objection. You may answer, sir.

A No, because they never asked me. They never did ask me about the gun."

The Missouri Supreme Court has stated that " . . . the silence of an accused while under arrest is not admissible against him because he is under no duty to speak. . . . We now hold that an accused's failure to volunteer an exculpatory statement is not admissible as an admission; that it may not be shown that by his silence he failed to deny or explain while under arrest an incriminating fact as to which no question was asked." *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970).

We do not believe, however, that the prosecutor's questioning requires reversal in this case. This is not a case in which a prosecutor was permitted to make reference to defendant's failure to deny his guilt or his failure to explain seemingly incriminating facts at the time of, or after, his arrest. Here the prosecutor asked defendant whether he had told the arresting officers that he had been carrying a toy gun during the robbery. The most that a jury could possibly infer from this question and defendant's answer that he had made no such statement is that defendant had actually been carrying a real gun, a fact in no way decisive of this case. Under such circumstances, the principle articulated in *Stuart, supra*, is inapplicable. *State v. Elmore*, 467 S.W.2d 915, 918 (Mo.1971); *State v. Turnbough*, 497 S.W.2d 856, 859 (Mo.App.1973). See also *State v. Hams*, 515 S.W.2d 789, 791 (Mo.App.1974). In *Stuart, supra*, 22, "the sufficiency of the State's case" depended upon the very fact on which it was shown that the defendant had elected to remain silent at the time of his arrest. From the fact of his silence, the court said, the jury could have inferred an admission of guilt.

Such is not the case here. As was demonstrated in connection with the discussion of the first two points, the issue whether the gun was a toy or a real weapon was immaterial; the decisive fact is whether Grinstead's perception of it as a weapon could be found to have put him in fear. In summary, although an arrested person's failure to volunteer an exculpatory statement may not be used against him, if the gun admittedly displayed by this defendant was a toy, such fact would not exculpate

defendant: the jury could nevertheless have found him guilty of robbery in the first degree.

Affirmed.

STEWART, P. J., and REINHARD, J., concur.