STATE of Missouri,
Plaintiff-Respondent,

v.

Steven Wayne ARNOLD,
Defendant-Appellant.

No. 39563.

Missouri Court of Appeals,
St. Louis District,
Division Three.

Sept. 12, 1978.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 17, 1978.

Nick A. Zotos, Asst. Public Defender, 22nd Judicial Circuit, St. Louis, for defendant-appellant.

John D. Ashcroft, Atty. Gen., Jeff W. Schaeperkoetter, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

GUNN, Presiding Judge.

Defendant was convicted of first degree robbery and assault with intent to do great bodily harm without malice. Pursuant to the Second Offender Act, § 556.280, RSMo1969, the trial judge assessed consecutive sentences of 25 years on the robbery conviction and 4 years for the assault. Defendant's appeal argues that the trial court erred: (1) in admitting testimony regarding tests made on a handgun which was not disclosed to defendant following defendant's disclosure request; (2) abused its discretion in admitting opinion evidence of an allegedly unqualified expert witness; (3) erred in overruling a motion for acquittal grounded on insufficient evidence. In his pro se supplemental brief, defendant challenges the trial judge's jurisdiction to assess punishment under the Second Offender Act, claiming that there was no basis for a prior felony. We affirm.

On the evening of October 6, 1976, the Owens Service Station on Goodfellow Boulevard in St. Louis was robbed. Sandle Strickland, the attendant on duty, testified that he became conscious of a person peering through the window of the station building while he was speaking on the telephone with his girlfriend. Suspicious, Strickland dropped the receiver and walked outside to investigate. When he returned to the office, someone put an object against his neck and warned him not to turn around. The robber, later identified as defendant Arnold, pushed Strickland into a small storeroom, forced him to lie face down on the floor and bound him with rags and a rubber hose. Defendant proceeded to remove cigarettes from the storeroom shelves while his accomplice pumped gasoline for various customers to divert attention from the robbery. The ploy was not successful. Strickland's girlfriend became concerned when he failed to return to the telephone and an unfamiliar voice told her that he was busy and would later call her back. Consequently, she contacted Strickland's parents, who drove to the station. The senior Stricklands observed the decoy, realized that he was not their son, and summoned the police.

Defendant was leaving the station when the police arrived, and an automobile chase ensued. Defendant was driving a car which belonged to his partner's girlfriend, and he testified that to his chagrin he discovered a gun in the car only after he attempted to elude capture. Realizing the added consequences of being caught with a pistol, he stated that he threw it out of the car window. When the gun dropped to the pavement, it fired.[1] The pursuing police officers interpreted the gunshot differently; they both testified that defendant pointed the gun at them directly and fired it. Defendant was captured and arrested after he rammed his car into a curb. Eighty-eight cartons of cigarettes and a wristwatch belonging to Strickland were found in his possession.

Defendant claimed that the entire robbery was planned by the former manager of the Owens Service Station with Strickland's knowledge and cooperation. He denied that Strickland had been forced into the storeroom at gunpoint; rather, that Strickland led him to the storeroom, helped him load some of the cigarettes and provided the hose and rags which were used to make the robbery look authentic.

■ Defendant complains initially that the trial court erred in permitting the State to introduce testimony regarding tests and examinations on the handgun allegedly fired by him. Defendant's motion for discovery had included a request for "reports

---

1. According to defendant:
    "When I threw the gun out the window and about a second or two later I heard a noise. I heard something say, 'Pow.' I say, 'Damn.' I say, 'The gun, it went off,' so I stepped on the gas a little harder. . . . ."

and statements of experts made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons." In his brief, defense counsel states that no reports concerning any ballistic tests were received.

At trial, the prosecution's expert testified that the gun was delivered to him shortly after October 6, 1976. At that time he checked for defects in the firing mechanism and determined that the gun was in firing condition. On June 29, 1977, a few hours before he was to testify, the expert examined the gun again with respect to the hammer block. He stated that although the mechanism was flawed, it was his opinion that the gun would not discharge unless the trigger were pulled.

It is not clear from the transcript whether defendant's attorney was apprised of the routine survey given to the gun upon its receipt by the State's expert. The actual examination on which the expert based his opinion regarding the likelihood of discharge upon impact did not occur until the afternoon of his testimony. But the gist of counsel's objection at trial concerned the expert's competency to testify and not unfair surprise. Quite to the contrary, defense counsel conducted a full cross-examination aimed at discrediting the expert's opinion for which no scientific evidence other than a cursory inspection provided the basis. Lacking a proper objection at trial, the point has not been properly preserved for appeal. *State v. Gadbury,* 558 S.W.2d 426 (Mo.App.1977).

■ Defendant's second contention of error focuses upon the previously mentioned objection: the expert's competency to testify. Defendant correctly concedes that a determination of expertise vests largely in the discretion of the trial court. Exercise of that discretion will not be disturbed on appeal absent abuse. *State v. Cook,* 557 S.W.2d 484 (Mo.App.1977). It is evident from the transcript that the State's expert's 11½ years in the Firearms Identification Section of the St. Louis Police Department eminently qualify him as a firearms expert. Any question concerning the extent of the officer's examination of the pistol prior to testimony would go to the issue of his credibility, rather than his competency. We find no error.

Under the original indictment, defendant was charged in three counts—first degree robbery, assault with intent to do great bodily harm and armed criminal action, with the jury finding him guilty on the robbery and assault charges but acquitting him of armed criminal action. Drawing the inference that no weapon was involved in the actual commission of the robbery, defendant claims that the court erred in overruling his motion for judgment of acquittal because the State failed to establish one of the elements of robbery in the first degree: violence or placing the victim in fear. § 560.120, RSMo1969; *State v. Hayes,* 518 S.W.2d 40 (Mo. banc 1975).

■ When sufficiency of the evidence is contested in a criminal case, it is our duty to view the facts in evidence and the favorable inferences to be drawn therefrom in a manner most favorable to the State. All contrary evidence and inferences must be disregarded. *State v. Williams,* 545 S.W.2d 342 (Mo.App.1976). Strickland testified that he was grabbed from behind and forced into the storeroom. His assailant threatened him with an object placed against his neck which Strickland believed to be a gun. Strickland was forced to lie down on the floor and was bound. The fact that the jury did not believe a gun was involved in the actual robbery should not negate the reasonableness of Strickland's fear of bodily harm. There was no direct testimony that Strickland expressed fear, but fear need not be expressly shown. *State v. Underwood,* 470 S.W.2d 485 (Mo. 1971), cert. denied 405 U.S. 923, 92 S.Ct. 980, 30 L.Ed.2d 802 (1972); *State v. Sykes,* 569 S.W.2d 254 (Mo.App.1978). The trial court properly overruled the defendant's motion in this regard.

■ In a pro se supplemental brief, defendant challenges the applicability of the Second Offender Act, § 556.280,

RSMo1969, to his circumstances. Although admitting an earlier conviction for robbery first degree by means of a dangerous and deadly weapon and a concomitant sentence of six years, defendant contends that the suspension of that sentence disqualifies the transaction as a conviction for the purposes of the Second Offender Act. Defendant has misinterpreted the precedent upon which he relies: *State v. Crate,* 493 S.W.2d 1 (Mo.App.1973). In that case, a conviction was disqualified because the actual imposition rather than the mere execution of the sentence was suspended. The Act is applicable, as here, to a person who has been sentenced and subsequently placed on probation. *State v. Hooper,* 399 S.W.2d 115 (Mo.1966). Therefore, defendant's sentence was properly imposed by the trial judge.

Affirmed.

KELLY and REINHARD, JJ., concur.