STATE of Missouri, Respondent,

v.

Frank BARNHART, Appellant.

No. 40567.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 24, 1979.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Sept. 17, 1979.

E. Rex Bradley, Louisiana, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Peter Sadowski, Asst. Attys. Gen., Jefferson City, William C. McIlroy, Pros. Atty., Pike County, Bowling Green, for respondent.

CRIST, Judge.

Defendant was charged with the capital murder of his wife at the family home in Clarksville, Missouri on June 18, 1977. A jury found him guilty of manslaughter and affixed punishment at eight years. We affirm.

By stipulation, it was agreed the death of the wife was caused by shots fired from a 12-gauge shotgun discharged by the defendant. However, the state and defendant disputed the sequence of events during the shooting. The state claimed the death was intentional. Defendant maintained it was accidental. Accordingly, the sequence, distance, and number of shots fired from defendant's gun became a significant matter of proof.

The state's evidence showed that defendant fired two shots at his wife in the driveway just outside of the house following a conversation between defendant and his wife. Then defendant's daughter, from inside the house, fired a .22-caliber pistol at the defendant, striking him in the leg. Defendant then fired two more shots at his wife. The wife was wounded by each of the four shotgun blasts.

Defendant testified to the contrary. He said his relationship with his daughter had become stormy, that his daughter fired shots at him as he concluded the conversation with his wife, and that he first hid behind his automobile and then opened his automobile trunk to retrieve his shotgun. He maintains he then fired the shotgun at his daughter in self-defense and accidentally hit his wife.

Defendant contends an experienced trap shooter was not qualified as an expert to perform experiments upon defendant's shotgun for the purpose of determining the patterns made when the shotgun was discharged at certain distances and then to testify as to the location and number of wounds observed on the victim's body as well as the distance between victim and the shotgun for each wound as indicated by the pellet patterns.

The expert witness had been a trap shooter since 1965. He used 12-gauge shotguns, the kind causing defendant's wife's death, exclusively. He had competed extensively throughout the United States and represented the State of Missouri on a state

team. He held an elective office as the Missouri delegate representing the Missouri State Trap Shooters Association. He had been named to the All American Trap Team by the publication "Sports Afield" in the years 1973, 1974, 1975, and 1976. He regularly shot approximately ten or eleven thousand clay birds a year.

The trap shooter testified in minute detail as to the mechanism of the shotgun and testified that he had performed numerous pattern tests, such as those in issue, in order to know exactly where his shotguns will shoot.

As the basis of his opinion, the witness performed a pattern test of the shotgun used by the defendant for the purpose of ascertaining the pattern which the pellets make at certain distances. The test was conducted by firing the shotgun at spatter boards from various distances. The pattern test could then be used to prove that the defendant fired at the victim from various distances, by comparing the patterns to the actual wounds.

After comparing the pattern of the spatter boards with the photographs of the victim, the expert testified that the victim was struck four times; that two wounds, found on the victim's right arm and right back, were caused by shotgun fired from a distance of ten to fifteen feet; that one wound, found on the right of the victim's trunk, was caused by shotgun fired from a distance about thirty feet; and that the other wound, found on the left arm, was caused by shotgun fired from a distance of fifty to fifty-five feet.

■ A witness may be competent to testify as an expert, although his knowledge touching the question at issue may have been gained by practical experience rather than by scientific study or research. *State v. Rhone,* 555 S.W.2d 839, 841–42 [2] (Mo.banc 1977). The test of expert qualification is whether the witness has knowledge from education or experience which will aid the trier of fact in forming an opinion on the subject matter of the inquiry. *State v. Harvell,* 527 S.W.2d 445, 448 [3] (Mo.App.1975).

■ In the instant case, there can be no question but that the trap shooter was an expert in the matter of patterns of shotgun blasts. He made extensive tests of the particular shotgun in question. The qualification of this expert witness was a matter resting primarily in the sound discretion of the trial court, reversible upon appeal only upon a clear showing of abuse of that discretion. *State v. Arnold,* 574 S.W.2d 1, 3 [2] (Mo.App.1978); *State v. Harvell, supra,* 527 S.W.2d at 447 [1]. We find no abuse of such discretion.

Any lack of expertise in the field of medicine or forensic pathology might be considered by the finder of fact in determining credibility but would not disqualify the witness as an expert concerning the interpretation of shotgun patterns. *See, State v. Windmiller,* 579 S.W.2d 730, 733–34 [12–13] (Mo.App.1979).

■ Defendant next complains that a licensed physician was not qualified to testify as to how many shotgun wounds the victim had sustained. Defendant argues a licensed physician must be an expert in the field of forensic pathology to give such testimony. He admits that the law is contrary to this proposition, but he urges the law should be changed. The medical witness was a licensed physician, a graduate of St. Louis University Medical School, having three years of additional training at the St. Louis City Hospital. We know of no ground which would militate in favor of changing the current status of the law in this regard. The witness was qualified to testify as he did. *State v. Windmiller, supra* (the trial court did not abuse its discretion in ruling experience qualified physician as a psychiatric expert although the physician was not board-certified as a psychiatrist); *Pate v. St. Louis Independent Packing Co., Div. of Swift and Co.,* 428 S.W.2d 744, 750 [4] (Mo. App.1968).

■ Defendant next complains of the admission into evidence of the post-mortem photographs of the victim used by the trap shooter to formulate his opinion as to the

number of wounds sustained by the victim and the estimated distance between shotgun and impact for each wound. The defendant argues the photographs were not relevant because the parties had stipulated the victim's death was caused by shotgun wounds inflicted by defendant and that four spent shotgun shells were found at the scene of the shooting and in defendant's shotgun. The defendant says that the photographs are, therefore, inflammatory and inadmissible. We disagree.

The challenged photographs were admissible to show the nature and location of the victim's wounds and provide evidence from which the jury could discern that three of the four wounds were caused by the firing of a shotgun from different distances. The jury could determine therefrom that there were four wounds and that two of the wounds were made from about the same distance and that the other two wounds were made at longer distances, with the third wound being made from a longer distance than the first two, and the fourth wound being made from a longer distance than the other three.

■ The photographs were clearly relevant as tending to prove or disprove the state's and defendant's theories. A photograph of the victim's body, showing the nature and location of wounds, is relevant and admissible in a homicide prosecution, although other evidence of the nature and location of wounds has been given, if the photograph corroborates, explains, or clarifies the testimony. *State v. Jackson*, 499 S.W.2d 467, 471–72 [5–9] (Mo.1973); *State v. Ward*, 569 S.W.2d 341, 345 [10–13] (Mo. App.1978) (the nature and location of wounds was relevant to the defense of self-defense); *see, State v. Windmiller, supra*, 579 S.W.2d at 733 [10–11].

Judgment affirmed.

REINHARD, P. J., and GUNN, J., concur.