**STATE of Missouri, Respondent,**

v.

**Leonard GIDEON, Appellant.**

No. 54620.

Supreme Court of Missouri,
Division No. 2.

May 11, 1970.

John C. Danforth, Atty. Gen., Dale L. Rollings, Asst. Atty. Gen., Jefferson City, for respondent.

Max Patten, Joplin, Stephen E. Ware, Reeds Springs, for appellant.

MORGAN, Judge.

The jury found defendant guilty of robbery in the first degree and assessed punishment at five years imprisonment. Sections 560.120 and 560.135, RSMo 1959, V. A.M.S.

The victim was George McGauhey, sixty-seven years of age, who lived four or five miles southeast of Reed Springs, Missouri, with his brother, James McGauhey, seventy-one years of age. On the night of December 11, 1968, George and James arrived at home about 9:00 o'clock. George testified: " * * * I fed my hogs and I went in and built a fire in the wood cook stove and put me on some supper * * * These boys come before I got my supper quite cooked * * * Leonard (defendant) and Clell come to the door and hollered and told us who they were * * * I went back into the kitchen to turn my eggs, and then while I was doing that I heard a little racket in the other room * * * my brother said 'Look out, George' * * * I picked up my flashlight on the table and started in there * * * just as I turned around, well, he grabbed me by the neck." George hit his assailant two or more times with the flashlight before it was taken from him. He further testified: " * * * he hit me on top of the head four or five licks, but I don't know if it was with the flashlight or with a stick of wood." After being knocked to the floor, his billfold with $20 was taken. Lighting for the entire residence was limited to one coal oil lamp and the flashlight.

James related the events of the evening as follows: "We had some company * * * Clell Snow and Leonard Gideon, and they called this other one Johnny part of the time and Donnie part of the time, so I don't know who it was * * * Gideon clinched me * * * I was sitting on the bed and he had me around the back with his arms crossed * * * Leonard was holding me and punching me in the stomach * * * this other boy (Johnny or Donnie) said 'I hit him over the head with a flashlight.' " The three visitors then left together. George and James walked to the home of a neighbor and were taken to the hospital in Branson for medical attention.

The arresting officer testified that when he sought to arrest defendant at his home that night, he was told, " * * * we would have to kill him first to get him out of his house." After his arrest the next morning, and he was told "who he was supposed to have robbed," defendant said, " 'You damned right, I beat hell out of him. He said I stole his dog.' "

Further evidence established that both George and James had known defendant for several years; that on a few occasions they had picked "maters" together; that George had loaned defendant a few dollars at different times; and that defendant had a son named Donnie.

Defendant was the only witness for the defense. He testified that he and Clell had been drinking, and he "could sort of feel it pretty heavy"; that the sole reason for the late trip to see the McGauheys was to stop James' false accusations that defendant had stolen a dog; that when he mentioned the subject to James, the latter got mad and grabbed him; that he finally got loose and left with Clell; that he knew nothing of a third person being present or of any attack being made on George; that his refusal to leave his home later that night was due to the fact his wife had had a baby the night before and he didn't want to leave her alone.

Argument is now made that the state failed to show defendant participated in the perpetration of the crime; which calls for determining whether or not the evidence was sufficient to sustain the judgment of conviction. After the jury has exercised its prerogative of judging the credibility of witnesses and evaluating the probative value of their testimony, we accept as true that evidence tending to support the verdict. State v. Slade, Mo., 338 S.W.2d 802; State v. Burton, Mo., 357 S.W.2d 927; State v. Thompson, Mo., 363 S.W.2d 711. Defendant relies on State v. Castaldi, Mo., 386 S.W.2d 392, and State v. Irby, Mo., 423 S.W.2d 800, while asserting that being "at the scene of a crime with no showing that the defendant participated in it, will not support a conviction." This

conclusion correctly states an established rule of law that was reviewed in both Castaldi and Irby. In the latter case it was found that: "There is nothing in the state's case to show that this defendant associated himself with this venture, affirmatively participated in the crime, forwarded the effort, or consciously shared in the act." However, as with any rule, its application depends on the facts of the particular case. Did this defendant participate in the robbery shown by the evidence? Participation, as such, does not demand that the state prove defendant personally committed all of the acts constituting the essential elements of the crime. State v. Butler, Mo., 310 S.W.2d 952. From the state's evidence, it could be found as true that three men at a late hour entered the McGauheys' home; that defendant assaulted one occupant while the unidentified intruder beat and robbed the other; that the attacks were simultaneous, and that made on James was to prevent him going to the aid of George; that immediately after the crime was consummated, the three left together. If the jury did not believe the "dog story," which it had the prerogative of doing, defendant was shown to have been an active participant in the crime. We find that an entirely reasonable inference defendant was acting in concert with the other two was created. "There can be no doubt that in Missouri all who act together with a common intent in the commission of a crime are equally guilty." State v. Gregory, Mo., 406 S.W.2d 662.

■ Next, it is submitted that the trial court erred in instructing the jury on first degree robbery. Sole reliance is placed on State v. Adams, Mo., 406 S.W.2d 608, wherein the court held: "It is elementary that in order to constitute robbery in the first degree the property must be taken from the person robbed by violence to his person or by putting him in fear. It is well settled that the violence or fear must precede or be contemporaneous with the taking of the property, and the subsequent use of force or intimidation to prevent the retaking of the property by the victim will not convert the act of stealing into the offense of robbery." The Adams case is factually distinguishable. There the defendant "snatched" a billfold from the victim's hand without intimidation or the exercise of any force in excess of that used for the "snatching." The court concluded that the acts described constituted the crime of stealing; and that the later encounter resulting from the victim's efforts to recover his property did not relate back to convert the original stealing to one of robbery. It is only necessary that the taking be accompanied by "violence" to the person of the victim *or* by putting the victim "in fear of some immediate injury." Section 560.120. The facts of this case justified the jury in finding both elements present. The violence by blows to the head preceded the taking. In addition, although fear is a subjective state, the grabbing of George's neck in a darkened room by an unidentified assailant established a factual basis sufficient to sustain a finding of not only "violence" but also "fear." The latter, of course, can be present without any violence to the person. The instruction on first degree robbery was proper.

■ The last argument is somewhat the converse of the latter. It submits that the trial court erred by not giving an instruction on the offense of stealing. This contention is without merit. As declared recently in State v. Keeney, Mo., 425 S.W.2d 85, loc. cit. 89, "Since the proof was sufficient in these questioned respects and in all others under the statute on robbery in first degree, it was not necessary to instruct on any lesser offense."

The judgment is affirmed.

All of the Judges concur.