**STATE of Missouri, Plaintiff-Respondent,**

v.

**Sherman Reginald CAIN, Defendant-Appellant.**

**No. 35326.**

Missouri Court of Appeals,
St. Louis District,
Division One.

March 12, 1974.

Lee & Randall, Robert J. O'Hanlon, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., James J. Barta, Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

SIMEONE, Judge.

Defendant-appellant, Sherman R. Cain, was indicted for unlawfully selling a Schedule I controlled substance, heroin, tried, found guilty by the jury and sentenced by the court to ten years in the department of corrections. He appeals. We affirm.

In this appeal he raises two issues: (1) whether the evidence was sufficient to sustain the conviction and (2) whether the court erred in submitting to the jury an instruction that if the jury agreed on guilt but was unable to agree on punishment the court may assess the punishment, the so-called "Kerry Brown" instruction.

In determining the first issue, whether there was sufficient evidence to sustain the conviction, the appellate court considers as true the evidence favorable to the state and the favorable inferences reasonably to be drawn therefrom and evidence to the contrary is rejected. Our function is not to substitute our judgment for that of the jury, but we determine only whether the evidence, considered in the light most favorable to the state and all inferences therefrom, disregarding evidence to the contrary, is sufficient to make a submissible case. State v. Lee, 404 S.W.2d 740, 746–747 (Mo.1966); State v. Watson, 350 S.W.2d 763, 766 (Mo.1961); State v. Murphy, 356 Mo. 110, 201 S.W.2d 280, 282 (banc 1947). If there is substantial evidence to support the finding of the jury, it cannot be disturbed on appeal. State v. Kemp, 234 Mo.App. 827, 137 S.W.2d 638 (1940).

On the evening of March 1, 1972, Special Agent Dennis W. Harker of the Federal Bureau of Narcotics and Dangerous Drugs met with a confidential paid informant who worked with the Bureau. Harker gave Mitchell two $10 Federal Reserve Notes from the fund pool of the Department of Justice in order to purchase some drugs. The serial numbers on the two $10 notes were recorded. At about 9:30 p. m. Harker and other federal and state officers in three or four vehicles together with Mitchell went to the vicinity of 1008 North 18th Street in St. Louis. There were several officers involved including Officer Robert Loehr of the Metropolitan Police Department, assigned to the Federal Drug Abuse Law Enforcement Unit, Dennis Stolte, also assigned to the office of Drug

Abuse Law Enforcement Unit, Kenneth R. Bloemker, special agent with the Federal Bureau of Narcotics. The officers set up a surveillance of the address. Mitchell got out of Harker's vehicle and went to the rear of that address. Mitchell referred to the address as "Frank Boone's House," although it was referred to by others as the habitation of the appellant, or the apartment of one Vivian Jackson. Mitchell went inside for a few minutes. When Mitchell went to the apartment, Frank Boone opened the door; Mitchell told him he wanted to "buy some jive (heroin)." Boone said, "O'kay. I'll go get it for you." Boone left with the two $10 bills; Mitchell did not know where he went inside the house, but when he returned, he "gave me [Mitchell] two bags of dope." While in the apartment, Mitchell saw Cain, whom he stated he "didn't exactly know," but "I knew who he was," standing on the stairs. From the stairs Cain spoke to Mitchell and asked him about $5 Mitchell owed him "for some bowling tickets." "He called downstairs and said to hold it for a moment because he wanted to get $5 from me like that. . . . He hollered down and told Frank Boone to tell me to stop and don't go nowhere yet because I owe him $5 just like that. . . ."

Mitchell left the house. When he came out, he proceeded to Harker's vehicle and produced two tin foil packets. These packets were "field tested" by a chemical solution designated as a "marquis reagent," indicating the possibility that the substance was heroin. Harker alerted the other officers and Harker, Loehr, Bloemker and Stolte proceeded to the rear door of the apartment. Mitchell remained behind. One of them knocked on the door. A person identifed as Frank Boone raised a curtain. In his hand he held a .45 automatic. The officers stated, "Police officers. Open up." Harker said, "Federal Agents. Open up."

The curtain immediately went down, there was a noise inside, Boone exclaimed in a loud voice, the gist of which was, "The police are outside." Harker and Stolte forced open the door, and the four officers entered. The apartment was arranged so that the rear door led into the kitchen; there was a livingroom, and stairs leading up to the second floor where there was at least one bedroom and a bathroom. The officers observed Boone leave the kitchen, throw the .45 automatic on the couch in the livingroom and proceed up the stairs with the officers in pursuit. When they reached the top of the stairs, Boone and the defendant Cain were in the bathroom area. The officers followed Boone up the stairs and when they reached the top of the stairs, the officers looked in the bathroom located at the top of the stairs and saw the defendant Cain standing next to the toilet "throwing numerous tin foil packets into the commode and flushing the toilet." Officer Bloemker "ran to the toilet and managed to grab about five of those tin foil packets." Some had gone down the toilet before Officer Bloemker could get them.

The officers then placed both Boone and Cain under arrest. They were handcuffed and taken downstairs where they were searched. One of the marked $10 bills was found on Boone, and one was found in Cain's front right trouser pocket.

Officer Stolte testified that after Boone and Cain were placed in handcuffs, he and other officers observed "numerous paraphernalia" on the top of a dresser in a bedroom. There was a "nylon stocking stretcher over a wire in a curved position," a wire strainer and a mixing spoon. These materials, it was stated, are normally used for the sifting and diluting of drugs.

The tin foil packets given to Mitchell by Boone, retrieved from the toilet and the paraphernalia were all admitted into evidence.

Defendant's evidence consisted of the testimony of Miss Deborah Kent and the defendant himself. Miss Kent testified that she, Cain and their baby went to "Miss Vivian Jackson's apartment" at 1008

North Eighteenth Street to show Vivian the baby. When they arrived there at about 7:00 p. m., Frank Boone was there, but Miss Jackson was not. Miss Kent, Cain and the baby waited upstairs in a bedroom where a television is located and watched television. Some time later, Miss Kent heard Cain "holler" down the steps and say, "Man, leave my money." She did not hear an answer. He returned to the bedroom and played with the baby. About five or ten minutes later, Boone came in and handed Cain some money and said, "Here's your money, Man. Eddie left the money." It was a $10 bill. About 20–25 minutes later the officers came. She denied that Cain was ever in the bathroom, nor did she see officers go into the bathroom.

A criminologist at the St. Louis Metropolitan Police Department identified the substances as heroin, a Schedule I controlled substance. Cain testified substantially the same as Miss Kent. He called down the steps and said, "Give me my money, Man," referring to ten dollars "he [Mitchell] owed me," for a bowling tournament. He received no reply from Mitchell. He returned to the bedroom and some time later the officers entered. He denied going into or being in the bathroom, denied being involved in the sale in any way and denied throwing any heroin down the bathroom toilet. He admitted the officers took a $10 bill from his person.

At the close of the state's case and again at the close of all the evidence, defendant moved for a judgment of acquittal. Rule 26.10. The motions were overruled.

The Court instructed the jury. Instruction No. 2 informed the jury *inter alia* that

"All persons are equally guilty, who act together with a common intent in the commission of a crime, and a crime committed by two or more persons acting jointly, is the act of all and of each one so acting." The Court also instructed on circumstantial evidence and gave Instruction No. 6 of which defendant complains.[1]

The jury returned a verdict of guilty of "Illegal Sale of Schedule I Controlled Substance, Heroin," but were unable to assess the punishment. After a motion for new trial was overruled, the court assessed punishment at ten years in the department of corrections.

Defendant's first contention on appeal is that the evidence is insufficient to make a submissible case.

In determining this issue in addition to the general principle that we must view the evidence most favorably to the state, there are certain well-established guidelines for us to follow. (1) All persons who are present at the commission of an offense and participating therein are principals and in such circumstances the act of one is the act of all; all persons who act together with a common intent and purpose in the commission of a crime are equally responsible therefor. State v. Lee, supra, 404 S.W.2d at 747; State v. Massey, 358 Mo. 1108, 219 S.W.2d 326 (1949); State v. Gideon, 453 S.W.2d 938 (1970); 9 Mo.Digest Criminal Law, ■■■ (2) A person who aids and abets the commission of a criminal offense is guilty as a principal. (3) Evidence sufficient to justify the jury in finding that the defendant did in any way aid, abet or encourage another in the commission of an offense is sufficient to support a conviction. State v.

---

1. "Instruction No. 6. You are further instructed that under the laws of this State the jury, after hearing the evidence and the instructions of the Court, should retire and decide upon the guilt or innocence of the defendant in this case; and if the defendant is found guilty by you, to assess his punishment in accordance with the other instructions of the Court. If, however, after due deliberation, you have been able to and do agree upon the guilt of the defendant but you are unable to agree upon the punishment to be assessed in this case for such guilt, you may return into court a verdict which states that you have agreed upon the guilt of the defendant but are unable to agree upon the punishment for such guilt, and, in that event, the Court may assess the punishment."

Lee, supra;[2] State v. Ramsey, 368 S.W.2d 413, 417 (Mo.1963). (4) Evidence that an accused had an opportunity to commit an offense which merely raises a suspicion and gives rise to conjecture, has been held insufficient as the basis for a conviction, and presence of an accused at the commission of a felony is evidence to be considered in determining whether a person is guilty of aiding and abetting. But to sustain a conviction, something more than presence must be shown. In addition to presence, it has been often held, to be necessary that the accused either "associate himself with the venture" in some fashion, or affirmatively participate in the crime in some manner as something he wished to bring about, or by his actions sought to make the offense succeed. He must consciously share in the criminal act. So that there must be some evidence to show that the accused participated in the offense. State v. Castaldi, 386 S.W.2d 392, 395 (Mo.1965); State v. Irby, 423 S.W.2d 800, 803 (Mo.1968); State v. Ramsey, supra, 368 S.W.2d at 417; Mays v. United States, 261 F.2d 662, 664 (8th Cir. 1958); United States v. Peoni, 100 F.2d 401, 402 (2nd Cir. 1938). Proof of any form of active participation suffices to establish the defendant's criminal agency. State v. G'Sell, 497 S.W.2d 882, 884 (Mo.App.1973); Kansas City v. Lane, 391 S.W.2d 955 (Mo. App.1965). Any evidence showing any form of affirmative participation is sufficient to support a conviction. Kansas City v. Lane, supra. Proof of conduct before, during or after the offense are circumstances from which one's participation in the offense may be inferred. State v. Corbin, 186 S.W.2d 469 (Mo.1945); State v. Castaldi, supra 386 S.W.2d at 395.

(5) In order to warrant a conviction or make a submissible case based upon circumstantial evidence, the facts and circumstances must (a) be consistent with each other, (b) be consistent with the hy-pothesis of the guilt of the accused, (c) be inconsistent with innocence, and (d) point so clearly to guilt as to exclude every reasonable hypothesis of innocence. State v. Odum, 351 S.W.2d 10, 14 (Mo.1961); State v. Burnley, 480 S.W.2d 881 (Mo. 1972); State v. Walker, 365 S.W.2d 597 (Mo.1963); State v. Murphy, supra.

Tested within these legal boundaries, if we view the evidence in the light most favorable to the state and inferences derived therefrom, we can conclude that there is sufficient evidence to submit the issue to the jury. A sale of two packets of heroin was made for two marked ten dollar bills. When the officers entered the apartment, the defendant was seen by a number of officers throwing tin foil packets into the toilet and attempting to flush them down the drain. Officer Bloemker retrieved five of the packets which did contain heroin. Immediately thereafter the defendant and Boone were searched and one of the two marked bills was found on his person. There is no evidence that any other money was paid to the defendant by Mitchell for the bowling debt, and no evidence to indicate Mitchell gave any additional money. Mitchell testified, "Yeah, I still owe him $5 for bowling tickets." Mitchell gave Boone two marked ten dollar bills. The defendant was present in the apartment at the time of the sale. There was evidence of narcotic paraphernalia.

In examining the State's evidence in the light most favorable to the state, we have therefore (1) the presence of the defendant in the apartment, (2) the presence of narcotic paraphernalia in he apartment, (3) "Marked" money was found on the defendant after the police went into the apartment, (4) the defendant's quick conduct in throwing material into the toilet indicating he must have known that narcotics were present in the apartment and must have known where they were located. He

2. The common law made distinctions between principals in the first and second degree and accessories before and after the fact. § 556.- 170 abolishes the distinctions between principals and accessories before the fact. State v. Tripp, 303 S.W.2d 627 (Mo.1957).

acted quickly after the police knocked on the door in attempting to throw the material away, (5) according to Officer Harker, defendant stated he lived there. This is not a case simply of presence or presence plus flight. All of the evidence in this record is sufficient to submit the case to the jury to show that the defendant participated in the offense of selling, and the court did not err in so submitting the case to the jury.

In State v. Irby, supra, while the Supreme Court held that the evidence was insufficient to establish a burglary and stealing, it is significant, we believe, that the court stated, "There is no evidence that defendant ever reached the filling station, or served as lookout . . . or later had any of the fruits of the crime in his possesssion or under his control. . . ." 423 S.W.2d at 802.

We believe the evidence shows some affirmative participation in the offense and therefore is sufficient to support the conviction.

■ Appellant's second point is that it was error to give Instruction No. 6. State v. Brown, 443 S.W.2d 805 (Mo. banc 1969)

involved the same instruction except the word "case" was used here rather than the word "cause." It was held that the giving of such an instruction along with the other instructions at the time the judge charges the jury is permissible. This type of instruction has since been affirmed by our Supreme Court in numerous decisions. State v. Mills, 465 S.W.2d 554, 556–557 (Mo.1971); State v. Thompson, 465 S.W. 2d 590, 593 (Mo.1971); State v. Ransburg, 466 S.W.2d 691, 693 (Mo.1971); State v. Gates, 471 S.W.2d 272, 274 (Mo.1971); State v. Garner, 481 S.W.2d 237, 238 (Mo. 1972); State v. Daugherty, 484 S.W.2d 236, 238 (Mo.1972); State v. Bolden, 494 S.W.2d 61, 67 (Mo.1973) and State v. Rand, 496 S.W.2d 30, 34 (Mo.App.1973).

The attacks made on Instruction No. 6 are without merit.

We hold the trial court did not err in submitting the cause to the jury or in giving Instruction No. 6.

The judgment of conviction is therefore affirmed.

DOWD, C. J., and WEIER, J., concur.