**STATE of Missouri, Respondent,**

v.

**Basil X. HATTEN, Appellant.**

**No. KCD 28124.**

Missouri Court of Appeals, Kansas City District.

Jan. 30, 1978.

Gary R. Bradley, Lexington, for appellant.

John D. Ashcroft, Atty. Gen., Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, for respondent.

Before PRITCHARD, P. J., SWOFFORD, C. J., and DIXON, J.

SWOFFORD, Chief Judge.

The appellant (defendant), after a jury trial, was found guilty under a three count information of Robbery in the First Degree (Count I) and Assault with Intent to Kill with Malice Aforethought (Counts II and III). He was sentenced to twenty (20) years on Count I, and eighteen (18) years each on Counts II and III. The sentences on Counts II and III were to run concurrently but consecutively with the sentence on Count I.

The original information charged the defendant of these crimes jointly with Adrian Gibson and Robert K. Bryant, but upon defendant's motions he was granted a severance and a change of venue to Lafayette County. Also, before trial an evidentiary hearing was held upon defendant's motion to suppress certain evidence and that motion was overruled.

The defendant raises four points or assignments of error on this appeal which may be thus summarized: (1) failure to sustain his motion to suppress evidence obtained by the police in an illegal search and seizure of a Cadillac automobile, such evidence particularly described as a black hat, and erroneously permitting it to be introduced as an exhibit; (2) failure to discharge and quash the panel of jurors (venire) or, in the alternative, failing to grant a new trial because there were only three blacks on the entire panel, of which one worked in a bank, and there were no blacks on the final panel, thus defendant was deprived of a fair and impartial jury; and, that this was a deprivation of his constitutional rights and was plain error; (3) failure to sustain defendant's motions for acquittal because the verdict was supported by incompetent and circumstantial evidence and the state failed to sustain its "burden of law" to show malice aforethought and deliberation with an intent to kill on the assault charge, as required by the statute; and (4) failure to sustain the defendant's objections to improper and prejudicial closing arguments of the prosecutor.

The sufficiency of the evidence to support the verdict is challenged by Point III and thus the evidence must be here reviewed in its light most favorable to support the verdict. *State v. Franco*, 544 S.W.2d 533, 534[1] (Mo. banc 1976), U. S. cert. denied 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977); *State v. Gideon*, 453 S.W.2d 938, 940[1] (Mo.1970), and cases cited in each. When so viewed, the evidence adduced and the reasonable inferences to be drawn therefrom warranted the jury in finding the following facts.

On Thursday, April 25, 1974, Mary Lou Ballenger, Assistant Manager of the Bank of Commerce West, at Columbia, Missouri (Bank) observed an unknown black man in the Bank lobby whose actions and close observation of the interior of the Bank aroused her suspicions. She left the Bank to make a business call in the neighborhood and observed this man get into a late model

white Cadillac automobile with a black vinyl top in the shopping center parking lot. She observed this car stop at another point in the parking area and pick up another black man.

When Ms. Ballenger returned to the Bank parking lot, she again observed the same Cadillac "cruising" the area and the occupants thereof closely scrutinizing the Bank's exterior and the surroundings. She obtained the license number and made a note of it in her pocket notebook. The number was CP 2587, and later developments disclosed that the car was registered in the name of Adrian Gibson.

During the noon hour on Monday, April 29, 1974, three black men entered the Bank and robbed it of about $22,000.00. Two of these men were armed with handguns and the third carried a sawed-off shotgun. According to the Bank employees, one of them wore what was described as a "red dress" and a "floppy" hat; another wore boxer shorts and a floral design shirt; and the third was dressed in a dark suit or jacket and trousers and wore a small black hat. None were masked. There were no Bank customers present.

These men threatened to shoot the four employees in the Bank and vaulted the tellers' cages. The employees were forced at gunpoint to lie face down on the floor and their hands were bound behind them. Some of the money which the men removed from the tellers' cash drawers was "bait money" which is marked and when removed from the drawers activates a silent alarm at the police headquarters in Columbia.

While the three armed robbers were in the Bank, someone shouted from the lobby entrance area "Let's get out of here" and the three robbers (and presumably the fourth man at the entrance, whose presence was established by automatic photos) fled the Bank, accompanied by the sound of gunfire from the outside. None of the four Bank employees could identify the defendant as one of the men.

Officer Hanks, a motor car patrolman with the Columbia Police Department, received a radio message that the alarm at the Bank had been activated. He immediately proceeded to the Bank and, upon arrival, observed a blue and white Plymouth automobile, containing one black male, parked on the north side of the building. As Officer Hanks drove up he saw two black men run from the Bank and the officer then fired five shots in an unsuccessful attempt to stop them. These men jumped into the Plymouth which then left the parking area with Hanks in pursuit, at speeds which reached 60–70 mph. Hanks testified that during this pursuit he observed five men in the Plymouth and that one of these jumped out during this time. At one time, one of them leaned out of a window of the Plymouth and fired a pistol at Hanks at a distance of two or three car lengths. The Plymouth turned into a Howard Johnson parking lot in the vicinity of Sexton Road and Hanks lost sight of it, but he observed that another police car had turned into the opposite side of the lot.

Officer Harold Calvin of the Columbia Police Department was on patrol southbound on Clinkscales Avenue when he received the radio alert with reference to the Bank. As he was driving toward the Bank he observed a blue and white Plymouth northbound and he attempted to stop it, without success. As the Plymouth passed him a shotgun was fired at him from one of the windows. A pedestrian, William Johns, a high school student, observed this occurrence on Clinkscales and was struck by some of the shotgun pellets but not seriously wounded.

William Treaster of the Columbia Police Department observed the high speed chase and pulled into a parking lot next-door to Howard Johnson's. He observed the Plymouth stop and men jumping out of the car. Shots were fired at him, one of which struck his pistol as he was returning the fire. The men from the Plymouth "took off" in different directions.

Mr. Roberts, who resided on the street in back of Howard Johnson's, while on his front porch at this time, heard gunshots and then observed three men run out of the door of Howard Johnson's and run towards

the business establishment of Hulett's Heating and Ventilation Company. One of these men, Roberts observed, carried a white sack in one hand and a gun in the other.

Mr. Wilson, who worked with a company sharing the same building with Hulett's, heard "bangs and booms going off" and went to the front of the shop. Through the window he saw two black men run past the window and he saw a third man with a .38 caliber handgun. He identified this man as the defendant. Wilson then walked out in front of the shop and saw a police car go by and the defendant lying on the ground underneath a motor vehicle. Shortly thereafter Wilson saw the defendant handcuffed and in police custody. Later, Wilson found a handgun hidden in the grill of his Chevrolet pickup truck and a pair of brown gloves beside it.

Earl Chick, who owns the business next-door to Wilson's place of employment, saw the defendant in the parking lot in front of his place lying on the ground underneath a truck. The defendant was wearing a pair of brown cotton gloves. Chick observed the defendant place a gun inside the grill of the truck, take off his gloves, drop them, and walk off. Chick also saw a man in that area wearing a bright red upper garment and carrying a sawed-off shotgun. He also found a pair of coveralls and a maroon cap lying on the ground near Hulett's shop.

The gun found in the grill of Wilson's truck, which Chick saw the defendant place there, was later found to contain five live and one spent cartridges.

Two other witnesses for the state, William Gibson and Steve Osborne, employed in the area, testified they had observed a man in a red dress, housecoat or shirt running past their locations. Osborne saw the man remove the garment and observed that he had a sawed-off shotgun. The man "ducked behind" a car when a police vehicle passed. Both Gibson and Osborne were then approached by the defendant, who was muddy and who made inquiry of them as to the man they had seen. The defendant told Gibson that the man had "pushed him down" and "I have got mud all over me". The defendant then went off in the direction indicated by Gibson and Osborne.

The defendant was arrested by Officer Vemer walking on Sexton Road about thirty yards from the parking area. He denied that he was the man seen hiding under the truck and accounted for his muddy condition by telling the officer he had been robbed and knocked down by two men. Only a matter of a few minutes elapsed from the time of the Bank robbery until defendant's arrest.

The police had been given a description of the white Cadillac automobile observed by Ms. Ballenger, as above related. This car was located the day of the robbery locked and parked in a lot two blocks from the Bank. It was towed away by the police and searched, without a warrant. A black hat was found in the Cadillac. This hat bore the imprint in the inside band of "Basil X".ˢ

Evidence linking the defendant to the crime was also found in the blue and white Plymouth which served as the getaway car. In it was a card case containing a number of credit cards in the name of "Basil X. Hatten" and a blue necktie and a coat belonging to the defendant. In the pocket of the jacket the police found three live rounds of .38 caliber ammunition. The police also recovered from the Plymouth a pillowcase containing $13,082.00.

The defendant testified in his own behalf and denied that he had participated in the robbery of the Bank. Substantially all other facets of the state's evidence against him he admitted but offered explanation.

His presence in the Cadillac he stated, came about by reason of the fact that he and Adrian Gibson, the owner, were engaged together on the morning of April 29, 1974 in selling Black Muslim newspapers in the Kansas City area. Since he had worked all the night before, he fell asleep in the back seat of the Cadillac and when he awakened they were fifteen miles west of Boonville, Missouri. He had "a confrontation" with Gibson because he had appointments for his employer to keep in Kansas

City that afternoon. He was unable to convince Gibson to return to Kansas City however, and he, Gibson and a man named Robert Bryant, whom he did not know but who was in the car when he awakened, proceeded to Columbia.

Here, he separated from Gibson and Bryant and became confused or lost as to his location. He was out walking trying to get his bearings. He was carrying his coat over his arm when he "heard a commotion" and as he turned around, he was hit in the side and fell to the ground. One of the three men who were running by him threw an object at his head which turned out to be a pistol which landed on the ground. Since he was on probation and desired to avoid trouble, he hid the pistol in the grill of the truck under which he had been knocked. Defendant did not again see his coat that he had been carrying and was unable to explain how it got into the Plymouth getaway car. He denied wearing any brown cotton gloves. He was arrested shortly thereafter walking on Everett Street.

Except as above noted, the defendant's testimony as to the details of his actions and conduct during and after the gunfight and getaway was in sharp conflict with the testimony of the state's witnesses. By testifying, the defendant placed his credibility in issue and it was for the jury to believe or disbelieve his version of the events of April 29, 1974. For reasons that are obvious, it chose not to credit his testimony with verity.

■ It is true that the state's evidence was based upon circumstances in that no one identified the defendant as one of the men inside the Bank during the robbery nor as one of the fleeing robbers who engaged in gunfire with the pursuing police. Such direct evidence is not necessary to support the guilty verdicts if from the facts and circumstances shown the jury could reasonably find that the defendant was present, aided, abetted, encouraged or participated in the plan or action of the robbery and the events thereafter. *State v. Adams*, 537 S.W.2d 201, 203[4] (Mo.App.1976); *State v. Gamache*, 519 S.W.2d 34, 39–40[1–8] (Mo.

App.1975); *State v. Cain*, 507 S.W.2d 437, 440–441[3–10] (Mo.App.1974).

■ The principle of review that all of the facts in evidence and all favorable inferences reasonably to be drawn therefrom will be considered in the light most favorable to the state, *State v. Franco, supra*; *State v. Gideon, supra*, applies with equal force and vigor whether the state's evidence against the defendant is circumstantial or direct. *State v. Cobb*, 444 S.W.2d 408, 412[3] (Mo. banc 1969); *State v. Cain, supra*, at 441[12]; *State v. Webb*, 527 S.W.2d 728, 729[1] (Mo.App.1975).

■ In order to support a guilty verdict based entirely on circumstantial evidence such evidence need not demonstrate the impossibility of innocence and the injection into the case of a possible hypothesis of innocence by the defendant's testimony (as here) is not enough to withhold or remove the case from the jury. *State v. Franco, supra*, at 534; *State v. Kramer*, 534 S.W.2d 281, 283[4] (Mo.App.1976); *State v. Maxie*, 513 S.W.2d 338, 343[5] (Mo.1974), U. S. cert. denied 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975).

■ The most compelling fact and circumstance shown by the evidence, which the defendant made no attempt to deny or explain, was that his coat and other personal effects were found in the Plymouth car employed in the Bank robbery and as a getaway vehicle. The undisputed evidence produced by the state was that the men in flight were observed abandoning the Plymouth and it was left with all four doors open, the motor running and the windshield wipers in operation. Thereafter it was kept under constant police surveillance and no person returned to the car. The reasonable (and indeed, inevitable) inference must be drawn that the defendant fled the car and left his coat and effects behind.

■ It is unclear from the wording of defendant's Point III whether he challenges the sufficiency of the evidence as to Count I (robbery) or only Counts II and III (assault with intent to kill) as charged in the infor-

mation. However, the record has been carefully studied on this appeal as to all three charges. It might be here again noted that the complaint as to Counts II and III is that the state failed to sustain its burden to show malice aforethought and deliberation with intent to kill as to the assaults charges. Malice and deliberation and intent in most circumstances are purely subjective and thus difficult, if not impossible, to prove by direct or positive evidence. This evidentiary gap is abundantly filled by an existing presumption of law that malice and intent exist as a concomitant of an unlawful assault with a deadly weapon. *State v. Webb*, 518 S.W.2d 317, 321[3–5] (Mo.App.1975); *State v. Ayers*, 305 S.W.2d 484, 486[1–3] (Mo.1957). In determining whether the necessary element of intent exists the jury may consider all of the related circumstances. *State v. Goodman*, 496 S.W.2d 850, 852[1] (Mo.1973); *State v. Kopf*, 481 S.W.2d 7, 9[1, 2] (Mo.1972).

■ Some forethought is implicit where bank robbers are fleeing and fire at pursuing officers. If the jury found defendant guilty of participating in the robbery of the Bank (as it did) the record also supports an inference and finding of guilt as to Counts II and III, the assaults by gun fire on Officers Harold Calvin (Count II) and Marty Treaster (Count III).[1]

The court did not err in refusing to direct a verdict of acquittal as to the charges against the defendant, and his Point III is ruled against him.

■ The defendant's Point I wherein he asserts error by the trial court in failing to sustain his motion to suppress the black hat found in the Cadillac automobile because it was the fruit of a warrantless and unconstitutional search and seizure is without merit since he lacks the necessary standing to assert such claim. This, for the reasons that the defendant claimed no proprietary or possessory interest in said Cadillac; he was not in or near the car when the search

was conducted; and, the black hat did not constitute an essential element of the offense charged. (In the latter connection the defendant admitted being a passenger in the Cadillac the morning of April 29, 1974 from Kansas City to Columbia). In the absence of one of these three essential elements to show standing the defendant cannot complain of the illegality of a search since he had no expectation of privacy in the place (vehicle). *State v. Bates*, 540 S.W.2d 161, 164–165 (Mo.App.1976), and authorities cited therein; accord, *State v. Perkins*, 543 S.W.2d 805, 807–808[3–5] (Mo.App. 1976); *State v. Damico*, 513 S.W.2d 351, 359[5] (Mo.1976).

The absence of such standing destroys the right to raise this claimed error. The defendant's Point I is ruled against him.

■ Under his Point II the defendant claims a violation of his federal and state constitutional rights to trial by a fair and impartial jury of his peers drawn from a cross section of the community. To support this position he states that there were only three blacks on the venire panel and "the state by preemptory (sic) challenge succeeded in keeping all three black persons off of the trial jury." He invokes the now well-established rule in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) that it was constitutionally impermissive to adopt a system of selecting persons to serve on venire panels where any process of systematic exclusion of blacks (or any other class of otherwise qualified citizens) was employed, and that it was equally violative of constitutional guarantees for the state to exercise its peremptory challenges so that the result would be a systematic exclusion of any class in "case after case". The rule in *Swain* has been adopted and followed in a long line of Missouri decisions. For example, see, *State v. Baker*, 524 S.W.2d 122, 124–125 (Mo. banc 1975); *Edwards v. State*, 535 S.W.2d 124, 125 (Mo.App.1976); *State v. Ross*, 530 S.W.2d 457, 460 (Mo.App.1975);

---

1. See: *State v. Bryant*, 548 S.W.2d 209, 212[3] (Mo.App.1977), a companion case wherein a conviction of Bryant, another occupant of the Plymouth, was affirmed; and *State v. Gibson*,

547 S.W.2d 861 (Mo.App.1977), wherein the conviction of the owner of the Cadillac automobile was affirmed.

*State v. Kelly*, 506 S.W.2d 61, 62–63 (Mo. App.1974), and many other cases which adopt the principles of *Swain.*

■ The difficulty which this court faces in attempting to rule this Point II is that the transcript filed in this case does not contain any of the pre-trial or voir dire record and it is therefore impossible to determine if the constitutional objections now raised as to the composition of the venire or the trial jury were properly raised and preserved, or if the defendant waived any such objections by accepting the panels. From the record before the court it appears that the question of the composition of the panels was raised for the first time in defendant's motion for a new trial. So far as this record discloses the defendant did not at any time produce or offer to produce any evidence to support his present objections, which involve questions of fact, the burden of establishing which rested on defendant. Thus, the record completely fails to afford any facts to bring the defendant within the ambit of the constitutional principles of *Swain v. Alabama* and the Missouri decisions cited above. This court is precluded from consideration on review of any facts not set forth in the approved transcript or supplemental transcript. Section 512.110 RSMo 1969; Rule 81.12. To do so would involve the rankest kind of judicial speculation and conjecture. This court declines to venture into that area. The defendant's Point II is ruled against him.

In his fourth and last point, the defendant charges error in that the trial court overruled his objection to the prosecuting attorney's closing arguments to the jury which the defendant asserts were outside the evidence and were intended to incite the passions, prejudices and fears of the jury and deprived him of his constitutional right to a fair trial. He points out in the argument in his brief seven (7) such instances of claimed improper argument. It should be here noted that during the course of the argument defense counsel made no objection; thereafter he made objection to only one of these arguments and such ob-

jection was general in nature and was made after the jury had retired to deliberate on its verdict; and, counsel asked for no relief such as a declaration of mistrial or admonition to the jury.[2]

■ Objections to improper arguments to the jury must be made at the time of the argument and come too late after the jury has retired or when raised for the first time in a motion for a new trial after verdict and judgment. Otherwise, nothing is properly preserved for review. *State v. Carter*, 478 S.W.2d 358, 361[4] (Mo.1972); *State v. Williams*, 419 S.W.2d 49, 53[6] (Mo.1967); *State v. Bankhead*, 536 S.W.2d 172, 173[2] (Mo. App.1976); *State v. Flynn*, 505 S.W.2d 48, 49 (Mo.1974). The reasons for this rule have been frequently stated. A trial court cannot be charged with error for reasons not timely presented so that remedial action may be taken during the trial, if required. *State v. Lang*, 515 S.W.2d 507, 511[7] (Mo. 1974); *State v. Perryman*, 520 S.W.2d 126, 132[15, 16] (Mo.App.1975).

In his brief the defendant steadfastly and stubbornly disregards these and many other authorities to the same effect and relies upon a few cases where the argument complained of or an accumulation of improper comments was so apparently objectionable and corrupting of the whole trial as to require unsolicited corrective action at the trial or on appeal. Such cases are not authoritative or controlling under the facts in this case.

■ The purport of defendant's brief, however, is that regardless of the above-stated principles, this court is requested to review Point IV as plain error under Rule 27.20(c). The hallmark principle of review as plain error is that although such review can encompass points of error not raised in the trial court or properly preserved for review, and this would include alleging error occurring in closing arguments, *State v. McClure*, 504 S.W.2d 664, 670[11] (Mo.App. 1974), the result of the trial below under these circumstances will only be disturbed if a "sound, substantial manifestation * *

2. Present counsel on appeal was not trial counsel below.

a strong, clear showing, that injustice or miscarriage of justice will result" is apparent on the record. *State v. Meiers*, 412 S.W.2d 478, 480–481[1] (Mo.1967). "Where no objection has been made to the argument review is usually denied without explanation." *State v. Bryant, supra*, at l.c. 211[1].

■ No useful purpose would be served or precedential value attach to a detailed analysis of the arguments complained of here and comparison thereof with the record evidence. Suffice it to say that this process has been carefully accomplished and the conclusion reached that each of the seven arguments complained of, taken in the context of the whole record, fall within permissible limits as argument of the facts and permissible inferences to be drawn therefrom within the legitimate scope of a prosecutor's admonition for law enforcement and the result of a verdict of acquittal. No deprivation of a fair trial, injustice or impairment of constitutional rights resulted.

The defendant's Point IV is ruled against him.

The judgment is affirmed.

All concur.